## BALL, ET AL. *v.* BOARD OF TRUSTEES OF THE STATE COLLEGES, ET AL.

[No. 424, September Term, 1967.]

*Decided December 11, 1968.*

686

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Herbert H. Hubbard* and *Paul S. Beatty,* with whom were *J. Edward Davis* and *Weinberg & Green* on the brief, for appellants.

*Lewis A. Noonberg, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Frank A. DeCosta, Jr., Assistant Attorney General,* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, dismissing the appellants' bill of complaint which sought declaratory and injunctive relief, restraining the appellee, Board of Trustees of the State Colleges (Board) from entering into a contract with a private corporation to provide food service at Morgan State College. The contract, if executed, would have had the effect of rendering unnecessary the further employment of the appellants by the college.

In November, 1967, the individual appellants were all classified service employees under the Merit System, (Code (1968 Repl. Vol.) Art. 64A), and were employed as food personnel at Morgan State College (College), Baltimore, Maryland. They are all members of the corporate appellant, Maryland Classified Employees Association, Inc., which is an association representing on a state-wide basis its members who hold positions in the "classified service" of the State of Maryland, established by Code (1968 Repl. Vol.) Art. 64A (Merit System).

In November, 1967, appellee, Dr. Martin D. Jenkins, Presi-

dent of the College, proposed to the Finance and Management Committee of the Board that he, as President of the College, be authorized to eliminate the food service department at the College and to have the department operated and the services performed by a private independent contractor.

The Board authorized Dr. Jenkins to proceed with his proposal. Dr. Jenkins advised the State Commissioner of Personnel (Commissioner), Russell S. Davis, that the College planned to use a private food service contractor to perform the services for the College that were at the time being performed by the individual appellants and sought the Commissioner's direction as to what procedures should be followed by the College with respect to the employees who occupied those classified positions.

The Commissioner, by letter, on December 19, 1967, advised the College that:

1. The names of present permanent employees in your food service department will be placed on the appropriate reinstatement list immediately.

2. It is understood the college will absorb as many of the employees as possible.

3. You will request Governor Agnew to send a letter to State agencies, which use similar classes, asking that these employees be given first consideration in filling their vacancies.

4. This Department will assist in any way possible in placement of these employees.

5. A representative of this Department will be present when you discuss this matter with the affected employees.

6. A recruiting examiner from this Department will go to the College and counsel with employees as to other classes for which they are qualified.

The record does not disclose any attempt by the appellants to have the Commissioner assume jurisdiction and review the propriety or the validity of the Board's action with respect to the reorganization of the food service department at the College

or to review the question of the layoff of these employees by the College. There was evidence however that the Commissioner was verbally advised by the Attorney General that he had no jurisdiction over the proposed change.

On January 5, 1968, the appellants filed a bill of complaint in the Circuit Court of Baltimore City alleging that the Board had acted beyond the scope of its legal authority in depriving the individual appellants of their positions without due process of law. The bill also sought injunctive relief requesting that the Board be restrained from entering into the contract and that its actions be declared null and void.

On January 8, 1968, the Board, at a regularly scheduled meeting, by an appropriate resolution approved a contract and invitation to bid by any private contractor to operate the food service department at the College. The contract provided that all employees presently employed in the food service department with five years or more service be retained as State employees for a period of one year, the College be reimbursed for the cost of such employment by the contractor, and that, at the expiration of the year, such employees be "laid off" as State employees, but should be eligible for employment by the contractor. This provision in the contract met with the approval of the Commissioner of Personnel.

The appellants were employees coming within the following job classifications:

(1) Food Service Manager I;
(2) Food Service Assistant I;
(3) Food Service Assistant II;
(4) Cafeteria Supervisor;
(5) Dining Room Supervisor;
(6) Food Service Worker;
(7) Cashier I;
(8) Service Worker;
(9) Senior Account Clerk; and
(10) Clerk Typist II.

On January 13, 1968, the appellees filed their demurrer and answer to the bill of complaint. By agreement the case was submitted to the Circuit Court of Baltimore City, on bill, demurrer

and answer. On February 5, 1968, Judge James K. Cullen filed a memorandum opinion which overruled appellees' demurrer but ruled in favor of the appellees on the basis that the Commissioner acted pursuant to his authority Code (1968 Repl. Vol.) Art. 64A, Section 16, in abolishing the positions held by the individual appellants at the College and on February 7, 1968, the court signed an order dismissing the appellants' bill of complaint, from which order this appeal is taken.

We affirm Judge Cullen's order dismissing the bill of complaint but for reasons different than those advanced by him in his memorandum opinion.

There is nothing contained in the appellants' bill of complaint or in the appellees' demurrer which warrant the finding made by the lower court that the State Commissioner of Personnel, with the approval of the Governor, abolished the positions held by the individual appellants pursuant to the Code (1968 Repl. Vol.) Art. 64A, § 16.[1] Support for the affirmance of the court below must be found in other reasoning. All parties agree that the Commissioner did not approve of the abolition of the positions of the appellants. However, what is more important, we do not think his approval was required by any of the provisions of Article 64A. We are of the opinion that the Board itself had

---

1. "Commissioner to establish classes and classify positions therein.

Subject to the approval of the Governor, the Commissioner shall establish classes and classify therein all positions in the classified service, and shall, from time to time, thereafter as may be necessary, establish additional classes and classify therein new positions created, and may combine, *alter or abolish existing classes*. Each such class shall embrace all positions similar in respect to the duties and responsibilities appertaining thereto and the qualifications required for the fulfillment thereof and shall be given a classification title indicative of the character and rank of the employment. The classification title thus prescribed shall be observed in all records and communications of the Commissioner, Comptroller and Treasurer. Employees shall assume the classification titles of their respective positions. *Any change in the duties of a position, if material, shall operate to abolish it and create a new position which shall be classified under this section*." (Emphasis supplied.)

the authority to abolish the food service department at the College and to arrange to have that service provided by a private contractor. In making such a move, the pertinent section of Article 64A with which the Board had to be concerned was § 35, which provides:

> "Sec. 35. An employee in a position that is to be abolished, discontinued, or vacated, because of change in departmental organization, or through stoppage or lack of work, shall be laid off and his name placed, in the order provided in the rules of the Commissioner, on the eligible list for the class of the position from which he was laid off."

In the instant case the College, after contacting the Commissioner of Personnel for advice, was specifically directed by the Commissioner to absorb the appellants in any vacant positions at the College, which called for any of the appellants' classifications, and to notify other State agencies of the availability of these employees for placement with those agencies having vacant positions in similar classifications. In short the Board followed the "layoff" procedure established by § 35 and that was all that was necessary.

We think that Code (1965 Repl. Vol.) Art. 77, § 165 (a) gives the Board authority to abolish positions in a department under its supervision and control by the language which invests it with "* * * all the powers, rights and privileges attending the responsibility of their management. * * *."

The appellants contend that this general administrative power conferred by Art. 77, § 165 (a) is restricted by the language of Art. 77, §§ 165 (c) and (d), which requires that employees of the State College and the Board, with certain exceptions not here relevant, shall be covered by the "Merit System" and hence subject to the provisions of Art. 64A. They further argue that under Art. 64A, § 16 only the Commissioner of Personnel, subject to the approval of the Governor, has the authority to abolish "existing classes," which they gratuitously equate with *existing positions.*

The arguments of both parties, and the primary question in this case, turns on the construction to be given the term "exist-

ing classes" in the context in which it is used in Art. 64A, § 16, the appellants contending that "existing classes" means the same as "existing positions" and the appellee contending that there is a fundamental difference between the two. We agree with the appellee.

We are of the opinion that when the Legislature employed the language "existing classes" in Art. 64A, § 16, it was referring to the various classifications of employment which § 16 gives the Commissioner of Personnel the authority to establish and classify throughout the statewide classified service system, applicable to all State departments and institutions. In other words, with reference to the instant case, the establishment by the Commissioner of Personnel of the classification of Food Service Manager I, meant that under such a designation minimum job qualifications had been prescribed for a certain type of employment which qualifications were applicable to the same and similar employment throughout the State, whether performed at Morgan State College, Frostburg State College, the Maryland House of Correction or elsewhere. Once such a classification has been established, only the State Commissioner of Personnel may "alter or abolish" such a *state-wide group of similar positions* singularly classified. The Commissioner's authority was, and is, required to establish and abolish *classes of positions,* however his authority is not required to abolish *individual positions within the class.*

Furthermore, it is unnecessary to rely solely on the language of § 16 to perceive a difference in meaning between "class" and "position" as used in § 16. Art. 64A, § 1, in relevant part, provides:

> "In this article and in all rules made hereunder, unless the context otherwise requires * * * 'position' means any office or place of employment in the classified service. * * * '[C]lass' means a group, established under the article of positions similar in respect to the duties and responsibilities thereof and the qualifications required therefor. * * *."

To hold that those charged and invested with the responsibility and authority to operate a State department or institution have

no authority to abolish a *position* in the classified service, as distinguished from the class, without the prior approval of the State Commissioner of Personnel, is in effect to confer upon the Commissioner a veto power over what may well be in many situations an important administrative policy. The demoralizing effect on organization and the patent inefficiency inherent in a system which would permit such encroachment on administrative responsibility is so obvious as not to require elaboration. To imply from the Commissioner's power to classify positions, a power to freeze the position beyond the reach of the appointing authority, which is also charged with the responsibility of the administration, is to read into § 16 something unnecessary to the exercise of the express power conferred on the Commissioner and to give to the word "classify" a strained and distorted construction.

Authorities universally affirm the proposition that the executive departments of government may lay off a merit system employee by abolishing the position which he holds, with the limitation that it be for a bona fide reason and not a subterfuge to evade the merit system laws. *Stockton v. Department of Employment,* 25 Cal. 2d 264, 153 P. 2d 741 (1944); *Hooper v. Jones,* 178 Md. 429, 434, 13 A. 2d 621 (1940); *Slavin v. City of Detroit,* 262 Mich. 173, 247 N. W. 145 (1933); *Maxwell v. Board of Comm'rs of City of Wildwood,* 111 N.J.L. 181, 168 Atl. 143 (1933); *Smith v. City Commission of Flint,* 258 Mich. 698, 242 N. W. 814 (1932); *Owen v. City of Detroit,* 259 Mich. 176, 242 N. W. 878 (1932).

The appellants would read into the action of the Board a nefarious precedent whereby the protection afforded State employees under the Merit System could be materially and substantially eroded by the wholesale contracting out to private contractors work performed by State employees. We think that such fear is unwarranted because unless such action is done in good faith it is subject to challenge in court. This was recognized by this Court in *Hooper v. Jones, supra,* which involved the failure on the part of Legislature to appropriate a salary for the appellant who was an investigator for the State Industrial Accident Commission with protection under the Merit System. In that case we said:

"* * * It has been repeatedly held that a Veterans' Preference Act can not circumscribe the right of municipal officials to abolish a position whenever they consider that such action is necessary for the public welfare, even though a veteran may be ousted thereby, provided that *there is no evidence of bad faith or subterfuge to defeat the statutory preference * * *.*" (Emphasis supplied.) Id. 178 Md. 429, 434.

Nor do we think that our holding in this case will frustrate the purposes sought to be promoted by the Merit System Law as set forth in Art. 64A, § 44.[2] The Commissioner is still empowered to classify a position under the classified service, to determine the qualifications of it and supply the candidates.

Furthermore, we find no merit in the appellants' contention that the action of the Board in the instant case constituted a violation of the "separation of powers" promulgated by Article 8 of the Declaration of Rights of the Maryland Constitution. The appellants rely upon *Ahlgren v. Cromwell,* 179 Md. 243, 17 A. 2d 134 (1941) which had to do with legislation (Chapter 41 of the Acts of 1920) authorizing the Governor, by executive order, to add offices and places of employment to the Merit System. This Court construed the Act as a grant of legislative power to the executive, which is impermissible. However, such a holding cannot be cited as authority to support the

---

2. Section 44, in pertinent part, provides:

"[The] purpose is to provide candidates for appointment to positions in the classified service after determining by practical tests of the fitness of such candidates for the positions which they seek, without regard to the political or religious opinions or affiliations of such candidates, or of any other standard except the business efficiency of the classified service, and to provide adequate means for the prompt removal from positions in the classified service of all persons therein who may be indolent, incompetent, inefficient, or otherwise unfit to remain therein, and to keep in a workable state the provisions for the promotion of employees as provided in this article to the end that the same shall be so administered as to attract the best class of candidates to the classified service."

694

converse situation, namely, that Article 8 prohibits the abolition of positions within the Merit System.

For the reasons stated in this opinion the order of the lower court is affirmed.

*Order affirmed, appellants to pay costs.*