807 A.2d 120

**Christopher KRAM, et al.**

v.

**MARYLAND MILITARY DEPARTMENT.**

No. 1483, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Sept. 9, 2002.

408

John F. Conwell (Davis & Associates Law Offices, P.A., on the brief) Towson, for appellants.

Stephen M. Doyle, Lieutenant Colonel (J. Joseph Curran, Jr., Atty. Gen. and Laura C. McWeeney, Asst. Atty. Gen., on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., JAMES R. EYLER, ROBERT F. FISCHER, (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

Appellants [1] are all employed by appellee, the Maryland Military Department, as classified State employees in one of the military airport firefighter classifications. There are four such classifications: airport firefighter trainee military, airport firefighter I military, airport firefighter II military, and airport firefighter lieutenant military. Appellants are employed at the Warfield Maryland Air National Guard Base at Martin's Airport in Essex.

All Military Department firefighters are required to maintain membership in the Maryland Air National Guard as a condition of employment. The requirement exists by order of the Maryland Adjutant General, the highest ranking State official in the Military Department and appellants' appointing authority. The Adjutant General's power to impose the requirement is based on federal National Guard Bureau Regulation(NGR)5-1/Air National Guard Instruction(ANG)63-101, chapter 36, paragraph 36-10(h). Paragraph 36-10 is entitled "Standards for Employment" and lists prerequisites for employment as a military airport firefighter, including age, education, physical fitness, training, medical requirements, security clearance requirements, and driver's license requirements. Subsection (h) provides that the requirement of military mem-

---

1. Harold Alley, David Brown, Bryan C. Cherry, Donald Farruggia, Kevin M. McLain, John L. Miles, III, Chris Mitchell, William Nickerson, Larry J. Norman, Jim Pritchard, Vincent Ramm, Dan Schimming, Fred Tittle, John Trommer, and Matthew J. Wagenfer.

bership will be determined at the Adjutant General level on a state by state basis.

On September 2, 1999, two of the appellants, plus another employee, filed a grievance with appellee seeking to end the requirement of National Guard membership. The grievance was later joined by other employees, including the other appellants. Appellants pursued the grievance through the administrative process and on October 31, 2000 through November 3, 2000, an Administrative Law Judge (ALJ) conducted a hearing. In her decision, dated January 22, 2001, the ALJ identified the five issues before her as follows:

1. Whether the grievance was filed in a timely fashion.

2. Whether management's [appellee's] imposition and/or maintenance of the requirement that the Employees maintain membership in the Guard (the "Guard requirement") is a non-justiciable military decision that may not be reviewed in this forum.

3. Whether the Guard requirement relates to the establishment of a classification standard and, therefore, cannot be the subject of a grievance.

4. Whether imposition and/or maintenance of the Guard requirement constitutes the misinterpretation or misapplication of a policy or regulation over which Management has control.

5. Whether the Guard requirement violates Article Twenty-Four of the Maryland Declaration of Rights and/or the Fourteenth Amendment to the United States Constitution.

The ALJ concluded:

1. The Grievance was not untimely filed.

2. Management's imposition and retention of the Guard requirement is not a non-justiciable military decision.

3. The Guard requirement is a classification standard, not properly subject to a grievance and, therefore, the Undersigned [ALJ] has no authority to rule on the following issues:

a. Whether the Guard requirement violates Article Twenty–Four and/or Twenty–Nine of the Maryland Declaration of Rights and/or the Fourteenth Amendment to the United States Constitution.

b. Whether imposition and/or maintenance of the Guard requirement constitutes an unconstitutional misapplication of a policy or regulation over which Management has control.

Appellants filed a petition for judicial review in the Circuit Court for Baltimore County, and a hearing was held on July 31, 2001. The circuit court affirmed the administrative decision on the ground (1) that the Guard requirement was part of the classification standard and thus exempt from the grievance process, and (2) that the grievance process was preempted by the federal regulation identified above, authorizing the Adjutant General to determine whether airport firefighters are required to be part of the National Guard.

## Questions Presented

The questions, as rephrased by us, are whether (1) the dispute herein is subject to the grievance process under state law, and (2) if it is, whether the state law is preempted by federal law. We answer the first question in the negative and thus do not reach the second question.

As a result of our decision on the first question, we affirm the judgment of the circuit court.

## Standard of Review

Our review of an administrative agency's decision is limited, as an agency's decision is presumed correct. *See Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376 (1999). A reviewing court considers all of the evidence before the agency and evaluates the agency's decisions, rather than those of the circuit court. *See Maryland Division of Labor & Industry v. Triangle General Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534 (2001). On appeal, a court must determine (1) whether the agency committed any errors of law, and (2) whether there is " 'substantial evidence

in the record as a whole to support the agency's findings and conclusions.'" *See State Ethics Commission v. Antonetti,* 365 Md. 428, 445–46, 780 A.2d 1154 (2001)(quoting *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994)); *Pollard's Towing, Inc. v. Berman's Body Frame & Mechanical, Inc.,* 137 Md.App. 277, 286–87, 768 A.2d 131 (2001).

In order to hold that there was substantial evidence to support the ALJ's decisions, we must conclude that, "based on the record, a reasonable mind could have arrived at the same conclusions" as the ALJ. *Antonetti,* 365 Md. at 446, 780 A.2d 1154. Further, "[w]here the agency's findings of fact and inferences are supported by the evidence in the record, the reviewing court must defer to the agency," meaning that we look at the agency's ruling with the presumption that it is correct and valid. *Id.* The Court of Appeals has also explained that, "[e]ven with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency," including interpretations of statutes which the agency itself administers. *Marzullo v. Kahl,* 366 Md. 158, 172, 783 A.2d 169 (2001)(quoting *Banks,* 354 Md. at 67–69, 729 A.2d 376).

### Discussion

As a part of the State Personnel Management System, the legislature enacted uniform grievance procedures for state employees. *See* Md.Code, State Pers. & Pens., §§ 12–101—12–405 (1997 Repl.Vol., 2001 Supp.). "Grievance" is defined in section 12–101(b)(1) as "a dispute between an employee and the employee's employer about the interpretation of and application to the employee of: (i) a personnel policy or regulation adopted by the Secretary; or (ii) any other policy or regulation over which management has control." The definition expressly excludes a dispute about "the establishment of classification standards." Md.Code, State Pers. & Pens., § 12–101(b)(2)(v).

Both the ALJ and the circuit court determined that the issue in the instant appeal comes within that exception,

and we agree. Since the primary question before us is whether the Guard requirement is part of a "classification standard," our task is one of statutory interpretation. It is well-settled that " 'the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature.' " *Marzullo*, 366 Md. at 175, 783 A.2d 169 (quoting *State v. Bell*, 351 Md. 709, 717, 720 A.2d 311 (1998)). We first look to the language of the statute itself, giving the words their ordinary meaning. *See Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987 (2000). If the statute is unambiguous, we need not look beyond its language to determine legislative intent. *See Maryland Dept. of the Environment v. Underwood*, 368 Md. 160, 175, 792 A.2d 1130 (2002).

The Guard requirement for military firefighters is not a "policy or regulation" controlled by appellee. Pursuant to Title 4, Subtitle 2, of the State Personnel and Pensions Article, the Department of Budget and Management (DBM) establishes categories of employment positions, as well as standards and procedures to be used in classifying positions. *See* Md. Code, State Personnel and Pensions, §§ 4–201—4–205. Heads of departments under DBM's authority must submit classification plans to DBM for approval, and DBM conducts audits, as necessary, of position classifications and procedures utilized in establishing such classifications. The statutory scheme of the State Personnel Management System indicates that by excluding a dispute about "the establishment of classification standards" from the grievance procedure, the legislature did not intend to permit employees to utilize that procedure to challenge DBM's exercise of its classification power. We perceive no error in the ALJ's conclusions of law and, therefore, will not disturb her ruling.

The uncontradicted testimony of Ms. June Carr, appellee's personnel officer, is also relevant as an aid in understanding and interpreting the statute. Ms. Carr explained that the Guard requirement is one aspect of the standards for determining who qualifies for the classifications in question, similar to a minimum level of security clearance and having a driver's

license. The ALJ found Ms. Carr's testimony to be credible, as explained in the written opinion:

> While I cannot conclude, based on the foregoing [discussion of the statutory scheme], that the Maryland Legislature intended "classification standards" to be completely synonymous with "job requirements," I do find that the Legislature intended such requirements to be considered as a major component of establishing classification standards.... Given the fact that Ms. Carr's testimony was unrefuted by the Employees and my review of the Personnel Article confirms her testimony, I interpret "classification standards" to be the standards DBM employs and department heads use, with DBM approval, to establish and assess a particular classification. Obviously such things as education, experience, licensure *and* membership (e.g., in the Guard) are among the matters reviewed or required to meet such standards.... Accordingly, the Employees claims concerning the alleged unconstitutionality of the Guard requirement cannot be resolved by way of this grievance proceeding.

Even though the ALJ opined that her decision was made "as a matter of law," this may be a mixed question of law and fact, *i.e.*, what is meant by "classification standard." [2] In our review of an agency's resolution of mixed questions of law and fact, however, "great deference must be accorded to the agency." *Stover v. Prince George's County*, 132 Md.App. 373, 382, 752 A.2d 686 (2000); *see also Comptroller of the Treasury v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 439–41, 508 A.2d 148 (1986)(citing *Ramsay, Scarlett & Co., Inc. v. Comptroller of the Treasury*, 302 Md. 825, 490 A.2d 1296 (1985)). As a result, our decision would be the same, whether we treated the issue as a question of law or as a mixed question of law and fact. *See Dept. of Health &*

---

**2.** As this Court explained in *Comptroller of the Treasury v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 508 A.2d 148 (1986), "our courts recognize that most decisions of an agency represent neither a singularly factual or legal determination; rather, they involve an application of the law to the facts...." *Id.* at 440, 508 A.2d 148.

*Mental Hygiene v. Campbell,* 364 Md. 108, 118, 771 A.2d 1051 (2001) (explaining that greater deference is owed to an agency's findings of fact and resolutions on mixed questions of law and fact than to its determinations on questions of law). Hence, we conclude that both the ALJ and the circuit court were correct in holding that a challenge to the Guard requirement is not a proper basis for a grievance under the State Personnel Management System, and we, therefore, affirm. In light of this decision, we need not address the federal preemption argument or appellants' contentions on the merits.[3]

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**

---

**3.** Appellants have asserted equal protection violations of the United States and State constitutions. In support of their equal protection argument, appellants rely on *McKamey v. State of Montana,* 268 Mont. 137, 885 P.2d 515 (1994), where the Supreme Court of Montana ruled that a requirement similar to the one in the case *sub judice* was unconstitutional. The plaintiffs in *McKamey,* however, brought suit in the form of a declaratory judgment action, rather than an administrative grievance. *See McKamey,* 885 P.2d at 518. In light of our decision in the instant appeal, we are not only not addressing the merits of appellants' equal protection argument, but we also make no findings regarding the feasibility of appellants maintaining the same argument in an action other than a grievance under the State Personnel Management System.