824 A.2d 99

Christopher KRAM, et al.

v.

MARYLAND MILITARY DEPARTMENT.

No. 99, Sept. Term, 2002.

Court of Appeals of Maryland.

May 12, 2003.

652

John F. Conwell (Davis & Associates Law Offices, P.A., on brief), Towson, for petitioners.

Lieutenant Colonel Stephen M. Doyle (Judge Advocate General's Corps., J. Joseph Currran, Atty. Gen., Laura C. McWeeney, Asst. Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

We must decide whether several State employees, employed as military airport firefighters by the Maryland Military Department, may grieve under Maryland Code (1993, 1997 Repl. Vol.) § 12–101 *et seq.* of the State Personnel and Pensions Article.[1] The employees contest a requirement of their employment, imposed upon all military airport firefighters by the Adjutant General of Maryland, that such employees maintain membership in the Maryland Air National Guard. The requirement, claim the employees, violates their rights under both the State and Federal Constitutions, as well as their retirement rights under the State Personnel and Pensions Article and the Employee Retirement Income Security Act, 29 U.S.C. §§ 21–101.

Administrative Law Judge (ALJ) Marleen Miller denied the grievance, determining that the National Guard requirement was a "classification standard" outside the scope of a statutory grievance and, therefore, that she had no authority to rule on the issue. The employees filed a petition for judicial review in the Circuit Court for Baltimore County, which affirmed the decision of the ALJ on two grounds: (1) that the National

---

1. Unless otherwise indicated, all subsequent statutory references shall be to Maryland Code (1993, 1997 Repl.Vol.) of the State Personnel and Pensions Article.

Guard requirement fell within the statutory exception to the grievance procedure; and (2) that the federal regulation imposing the requirement, Chapter 36 of National Guard Regulation 5-1/Air National Guard Instruction 63-101, preempted the State grievance process.

The Court of Special Appeals affirmed. *Kram v. Md. Military Dept.*, 146 Md.App. 407, 807 A.2d 120 (2002). We granted the employees' petition for writ of certiorari to consider the question of whether these State employees could use the grievance procedure to resolve the question of whether, as a condition of their employment, management could require them to be members of the Maryland Air National Guard. *Kram v. Md. Military*, 372 Md. 429, 813 A.2d 257 (2002). We agree with the Court of Special Appeals, and shall affirm. The ALJ's denial of the employees' grievance was a correct conclusion of law because the firefighters' demand to eliminate the National Guard requirement is a challenge to the establishment of a classification standard, one that, based on the plain language of the statute, is not the proper subject of a grievance.

## I.

The following relevant facts, either stipulated to by the parties below or found as facts by the ALJ, are not in dispute. The employees in this case have all been employed as Military Department firefighters at the Warfield Maryland Air National Guard Base in Essex, Maryland. They provide fire protection for military and civilian aviation activities at both Martin's Airport and Warfield. Military Department firefighters are classified into four separate employment classes: (1) Airport Firefighter Trainee Military (class code 1506); (2) Airport Firefighter I Military (class code 1507); (3) Airport Firefighter II Military (class code 1508); and (4) Airport Firefighter Lieutenant Military (class code 1509). While rates of pay and some job functions may be similar, the four Military Department firefighter classifications are separate and distinct from airport firefighters employed by other State agencies.

All Military Department firefighters are required to maintain membership in the Maryland Air National Guard as a condition of employment. The Court of Special Appeals set out the requirement of the employment as follows:

"The requirement exists by order of the Maryland Adjutant General, the highest ranking State official in the Military Department and appellants' appointing authority. The Adjutant General's power to impose the requirement is based on federal National Guard Bureau Regulation (NGR)5–1/Air National Guard Instruction (ANG)63–101, chapter 36, paragraph 36–10(h). Paragraph 36–10 is entitled 'Standards for Employment' and lists prerequisites for employment as a military airport firefighter, including age, education, physical fitness, training, medical requirements, security clearance requirements, and driver's license requirements. Subsection (h) provides that the requirement of military membership will be determined at the Adjutant General level on a state by state basis."

*Kram,* 146 Md.App. at 410, 807 A.2d at 121.

Each employee was aware of this requirement when he accepted a position as a Military Department firefighter. A Military Department firefighter who ceases to be a member of the National Guard, for any reason, is terminated from his position with the State.[2] As a result, military firefighters may be ineligible for certain State retirement benefits.

## II.

■ The Maryland Administrative Procedure Act, Maryland Code (1984, 1999 Repl.Vol.) § 10–101 *et seq.* of the State Gov't. Article, sets forth the procedure for judicial review of

---

2. National Guard membership may cease for a number of reasons, including mandatory retirement due to age (60), reduction in personnel, or medical problems that would not otherwise prevent a non-military employee from performing as an airport firefighter. Furthermore, National Guard membership obligates the employees to attend one Unit Training Assembly or rescheduled Unit Training Assembly per month, to attend two weeks of active duty deployment per year, and to remain available for activation and deployment by the federal government.

an administrative agency decision. Section 10–222(h) of the Act specifies that the court may:

"(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary and capricious."

We recently set forth the standard of review of an agency decision in *Motor Vehicle Admin. v. Atterbeary*, 368 Md. 480, 796 A.2d 75 (2002). We stated:

"Upon judicial review, the Circuit Court is limited to determining whether there was substantial evidence on the record as a whole to support the agency's findings of fact and whether the agency's conclusions of law were correct. In reviewing the administrative agency's decision, we apply the same statutory standards as the Circuit Court."

*Id.* at 490–91, 796 A.2d at 81–82 (citations omitted). We review the decision of the agency, not that of the circuit court. *See Mehrling v. Nationwide Ins. Co.*, 371 Md. 40, 57, 806 A.2d 662, 672 (2002); *Gigeous v. Eastern Correctional Institution*, 363 Md. 481, 495–96, 769 A.2d 912, 921 (2001).

 Upon judicial review, the reviewing court does not substitute its judgment for the expertise of the administrative agency. *See Jordan Towing Inc. v. Hebbville Auto Repair Inc.*, 369 Md. 439, 450, 800 A.2d 768, 774 (2002). We noted in *Jordan Towing* as follows:

"Despite some unfortunate language that has crept into a few of our opinions, a 'court's task in review is not to

substitute its judgment for the expertise of those persons who constitute the administrative agency.' ... Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.... Furthermore, the expertise of the agency in its own field should be respected."

*Id.*, 800 A.2d at 775 (quoting *Board of Physician v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376, 381 (1999)). We may always determine whether the agency made an error of law. *Id.*

### III.

The Legislature has enacted a uniform grievance procedure for employees to invoke to resolve certain disputes. *See* § 12–101 *et seq.* A "[g]rievance means a dispute between an employee and the employee's employer about the interpretation of and application to the employee of (i) a personnel policy or regulation adopted by the Secretary; or (ii) any other policy or regulation over which management has control." § 12–101(b)(1). Section 12–101(b)(2) excepts six subject areas from this general definition of "grievance." They are as follows:

"(i) a pay grade or range for a class;

(ii) the amount or the effective date of a statewide pay increase;

(iii) the establishment of a class;

(iv) the assignment of a class to a service category;

(v) the establishment of classification standards;

(vi) an oral reprimand or counseling."

§ 12–101(b)(2). Thus, if a subject falls within the excepted categories, it is not a basis for a grievance.

The ALJ found that the National Guard requirement was a "classification standard" for each of the four classes of military airport firefighters. The Circuit Court and the Court of Special Appeals agreed. If the ALJ, Circuit Court and Court

of Special Appeals are correct in concluding that the National Guard requirement is a classification standard, then, according to the plain language of § 12–101(b)(2)(v), the *requirement* was not the proper subject of a grievance. The employees argue that the ALJ was wrong in categorizing the National Guard requirement of employment as a "classification standard."

■■■ A "position" in the State Personnel and Pensions Article, is defined as "an employment assignment of duties and responsibilities that requires the full-time employment of one individual or less than full-time employment of one or more individuals." § 1–101(j). In contrast, a "class" is defined as "a category of one or more similar positions, as established by the Secretary in accordance with this article." § 4–201(b)(3). Classes are comprised of one or more positions that have similar duties and responsibilities and have similar qualifications to perform those duties and responsibilities. § 4–201(b)(3)(i) to (iii). The Secretary of the Department of Budget and Management's authority is required to establish, modify, and abolish classes of positions. *See Ball v. Board of Trustees*, 251 Md. 685, 691, 248 A.2d 650, 654 (1968). Such authority is not required, however, to abolish individual positions within a class. *Id.*, 248 A.2d at 654.

Along with the authority to regulate classes of employment, the Legislature exempted actions taken pursuant to this authority from the grievance process. Thus, under § 12–102(b), an employee may not grieve the pay scale of a class, the establishment of the class, the particular service category a class is assigned to, or the establishment of classification standards. § 12–102(b)(i) to (v).

The ALJ concluded, and the employees do not dispute, that the four Military Department firefighter classes are proper classes within the meaning of the statute. All Military Department firefighters have a common requirement of employment-membership in the National Guard. The Military Department maintains that the National Guard requirement is a "classification standard" related to the four classes of military

firefighters. The employees, on the other hand, claim that the military service requirement is the requirement of individual positions, not subject to the Secretary's authority, and thus not excepted from the grievance process.

The State presented evidence at the agency hearing that the military service requirement was created as a requirement of the class as a whole rather than a requirement of a position. June Carr, the Military Department's personnel officer, testified that the Military Department has no authority over classifications and that "the Department of Budget and Management is responsible for classifications." She explained that the Military Department could only request specialized job classifications. She further explained that the military service requirement was attributed to the class as a whole, and that the Military Department would not be capable of creating, removing, or altering it, absent the action of the Department of Budget and Management.

 Although "classification standard" is not a defined term within the State Personnel & Pensions Article, § 4–202 directs the Secretary to "establish standards and general procedures to be used to classify positions." [3] Thus, "classification standards" appear to be those standards created by the Secretary for the guidance of individual agencies. The ALJ reached a similar conclusion as to the role of "classification standards":

> "I interpret 'classification standards' to be the standards DBM employs and department heads use, with DBM approval, to establish and assess a particular classification. Obviously such things as education, experience, licensure

---

3. Section 4–202 states in full:

"**§ 4–202. Standards and procedures to classify positions.**
The Secretary shall:
(1) establish standards and general procedures to be used to classify positions in the skilled service, professional service, management service, and executive service; and
(2) provide training and guidance on the use of those standards and procedures."

and membership (e.g., in the Guard) are among the matters reviewed or required to meet such standards."

*Kram*, 146 Md.App. at 414, 807 A.2d at 124. Classification standards encompass those requirements, approved by the Secretary, to which all members of the class are subject.

We hold that the requirement at issue here is a classification standard, and hence not grievable. The National Guard requirement is a part of the military firefighter classifications, created in the establishment of the classes. The requirement was incorporated into each of the four military firefighter classes. The Court of Special Appeals explained as follows:

> "The Guard requirement for military firefighters is not a 'policy or regulation' controlled by [the Maryland Military Department]. Pursuant to Title 4, Subtitle 2, of the State Personnel and Pensions Article, the Department of Budget and Management (DBM) establishes categories of employment positions, as well as standards and procedures to be used in classifying positions. *See* Md.Code, State Personnel and Pensions, §§ 4-201-4-205. Heads of departments under DBM's authority must submit classification plans to DBM for approval, and DBM conducts audits, as necessary, of position classifications and procedures utilized in establishing such classifications."

*Kram*, 146 Md.App. at 413, 807 A.2d at 123. The National Guard requirement was enacted pursuant to the procedure created for the establishment of a class. By the plain language of the statute, the employees may not grieve "the establishment of a class," nor any classification standard utilized in such establishment. § 12-102(b)(iii), (v).[4]

■ The employees assert that the Secretary's determinations regarding classes do not include the actual requirements

---

4. The Circuit Court for Baltimore County affirmed the decision of the ALJ on the additional ground that the federal regulation which imposed the requirement preempted the State grievance process. The employees appealed this ruling. Because we determine that the employees' complaint was not grievable, it is unnecessary to determine whether the subject of the complaint was preempted.

of given employment positions. Under this analysis, the establishment of a class and the requirements of positions within that class are mutually exclusive. According to the employees, an individual job requirement, whether educational, professional or otherwise, is the requirement of a position, but not part of the Secretary's establishment of the class. We find no support for this assertion in either the language of the statute or the legislative history.

In addition to the language of the statute itself, legislative history reveals an intent by the Legislature to include requirements of this type in established classes. In contemplation of revising the State Personnel Management System, the Task Force to Reform the State Personnel Management System was commissioned by executive order and its findings and recommendations were submitted to Governor Glendening in January 1996. The Task Force Report, a compilation of the Task Force's proposals, included the following definition of the term "classification":

> "a description of duties and responsibilities; knowledge, skills and abilities; education and experience requirements; *and special requirements for one or more positions* to which the same selection standards and rates of pay can be applied."

Task Force to Reform the State Personnel Management System, *Report to the Governor* 4 (1996) (emphasis added).

The wording of this definition is broad, encompassing the "special requirements" of certain types of employees such as membership in the National Guard. This broad definition was not included in the Legislature's eventual enactment of the personnel management system, nor was it expressly disavowed in any subsequent legislative history. The employees argue that its exclusion represents the Legislature's intent to adopt a more narrow definition. We do not agree. We find the definition to be compatible with the statutory scheme as enacted by the General Assembly. It appears that this was the sole definition before the Legislature at the time the statutory scheme was considered, and there is no reason to

believe the Legislature intended anything other than the concept as defined by the Task Force Report.

As additional support for their argument, the employees refer to the legislative history of the grievance procedure, specifically the State Personnel System Reform Act of 1996, noting that the grievance process was designed to be the "exclusive remedy" for an employee in the State Personnel Management System. From this, the employees assert that exclusion of their grievance would deprive them of any avenue to address the alleged infringement of their rights. The ALJ addressed this argument by the employees:

"Although a grievance may in some ways be an exclusive *administrative* remedy, this does not mean that the Employees are deprived of any and all remedies to resolve what they contend is Management's unconstitutionally inequitable treatment of military firefighters in terms of retirement benefits, overtime pay, or the use of paid State leave. For example, as the employees did in *McKamey* [*v. State*, 268 Mont. 137, 885 P.2d 515 (1994)], the Employees here could file a declaratory judgment action in circuit court. As to overtime issues, the Employees could also pursue an action in federal court under the FLSA. With respect to retirement benefits, when and if one of the Employees is discharged upon reaching the Guard retirement age, he could then appeal his termination on constitutional grounds. I offer these potential alternatives in response to the Employees' contention that this proceeding is their only recourse, without offering any opinion or conclusion as to whether or to what extent the Employees might be successful in pursuing their claims in another forum."

We agree that preventing the present grievance action does not necessarily preclude the employees from seeking redress for their perceived injuries. We find only that the Legislature prevented the employees from their present course.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*