854 A.2d 1200

**MARYLAND MILITARY DEPARTMENT, et al.**

v.

**Bryan CHERRY, et al.**

No. 98, Sept. Term, 2003.

Court of Appeals of Maryland.

July 27, 2004.

Col. Stephen M. Doyle (Judge Advocate General's Corps, Maryland Army Nat. Guard, J. Joseph Curran, Jr., Atty. Gen., Laura C. McWeeney, Melissa S. Whipkey, Asst. Atty. Generals, on brief), for petitioners.

John F. Conwell (Davis & Associates Law Offices, P.A., Towson, on brief), for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

This case presents the question of whether Military Department airport firefighters may bring a direct suit in the circuit courts of this State against the State for overtime wages for attending National Guard drills, annual training and other federally mandated military training. Respondents, present and former Maryland Military Department airport firefighters, filed suit in the Circuit Court for Anne Arundel County against the Military Department and the Adjutant General. We shall hold that the Circuit Court lacks jurisdiction because the administrative grievance procedure set forth in Maryland Code (1993, 1997 Repl.Vol., 2003 Cum.Supp.) § 12–101 *et seq.* of the State Personnel and Pensions Article is the exclusive remedy for adjudication of respondents' overtime claims and respondents have not exhausted their administrative remedies.

## I.

Respondents are twenty-three State employees, currently or formerly employed by the Maryland Military Department as airport firefighters at Martin's Air Base in Essex, Maryland. As a condition of their employment, respondents are required to maintain membership in the Maryland/United States Air National Guard (the "National Guard"). As National Guard members, they must attend two days of inactive duty training per month (eight and one-half hours per day, for a total of seventeen hours), and two weeks of active duty per year (twenty-four hours per day, for a total of 336 hours). Respondents are paid for their military service in the National Guard exclusively by the federal government pursuant to federal law.

*See* 37 U.S.C. §§ 204(a)(2) and 206(a). The State neither compensates respondents for the time they spend engaged in National Guard duties nor considers that time for the purpose of calculating overtime wages.

On January 10, 2002, respondents filed suit in the Circuit Court for Anne Arundel County seeking overtime wages from the State for attending requisite National Guard drills and training. Respondents alleged that they were entitled to such compensation on the basis of wage and hour laws in Maryland Code, § 3–401 *et seq.* of the Labor and Employment Article; Maryland Code, § 8–301 *et seq.* of the State Personnel and Pensions Article; COMAR 17.04.02.08; and the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* The State moved to dismiss the action on the grounds that the State has not waived its sovereign immunity for direct judicial actions seeking overtime compensation and that respondents are not subject to the provisions of the FLSA when performing military service. Judge David S. Bruce granted the State's motion, concluding that the administrative and judicial review grievance procedure set forth in §§ 12–101 through 12–405 of the State Personnel and Pensions Article is the exclusive remedy for overtime wage claims against the State.

Respondents noted a timely appeal to the Court of Special Appeals. In an unreported opinion, that court vacated the judgment of the Circuit Court dismissing the overtime claim. The court referred to our earlier case of *Kram v. Maryland Military Department,* 374 Md. 651, 824 A.2d 99 (2003), in which some of the plaintiffs in the instant action were among the plaintiffs. There, the plaintiffs contested a requirement of their employment that as military airport firefighters, they must maintain membership in the National Guard. The firefighters claimed they had a right to grieve under Maryland Code (1993, 1997 Repl.Vol., 2003 Cum.Supp.) § 12–101 *et seq.* of the State Personnel and Pensions Article.[1] The administra-

---

1. Unless otherwise indicated, all future statutory references to the State Personnel and Pensions Article shall be to Maryland Code (1993, 1997 Repl.Vol., 2003 Cum.Supp.).

tive law judge denied the grievance on the ground that the National Guard requirement was outside the scope of a statutory grievance. On judicial review, the Circuit Court affirmed. The Court of Special Appeals affirmed, and this Court affirmed, holding that based on the plain language of the statute, the National Guard requirement was the establishment of a classification standard and therefore, one not the proper subject of a grievance. *Id.* at 654, 824 A.2d at 101.

Seizing on our language in *Kram* that "preventing the present grievance action does not necessarily preclude the employees from seeking redress for their perceived injuries," the intermediate appellate court remanded the instant case to the Circuit Court, holding that the Circuit Court erred in ruling that the grievance procedure is the exclusive remedy for the overtime wage claims the plaintiffs asserted.

We granted the State's petition for writ of certiorari. 378 Md. 617, 837 A.2d 928 (2003).

## II.

The State argues that respondents may not bring a direct judicial action against the State for allegedly unpaid overtime wages because overtime claims may be pursued only through the administrative and judicial review grievance procedure set forth in Title 12 of the State Personnel and Pensions Article. As support, the State points to *Robinson v. Bunch,* 367 Md. 432, 788 A.2d 636 (2002), in which this Court held that the State has not waived its sovereign immunity for direct judicial actions seeking overtime compensation and overtime claims instead must be pursued through the administrative grievance procedure. The State argues alternatively that even if respondents were entitled to bring their action in the Circuit Court, the Court of Special Appeals erred by not affirming dismissal on the substantive ground that the wage and hour provisions of the FLSA do not apply, as a matter of law, to military service in the National Guard.

Respondents advance several grounds in support of their argument that they are not limited to pursuing their overtime

claims through the administrative grievance procedure. First, they argue that the plain language of § 12–103(b) of the State Personnel and Pensions Article supports jurisdiction in the Circuit Court. Section 12–103(b) states that the grievance procedure is the exclusive remedy only when an employee seeks "an administrative remedy for violations of the provisions of this article," and, respondents assert, they are seeking more than just administrative remedies and raising claims under the Labor and Employment Article and the FLSA. Respondents also point out that § 8–302(b) dictates that State employees are entitled to "the greater of" the benefits that are provided in Subtitle 3, "Overtime Compensation," and the benefits required by the FLSA. Because remedies available to a successful grievant under the State Personnel and Pensions Article are much more limited than those available under the FLSA, respondents argue that limiting an employee's action to a grievance would deprive the employee of the greater benefits provided by the FLSA. *See* § 12–402 of the State Personnel and Pensions Article (limiting remedies to "the restoration of the rights, pay, status, or benefits that the grievant otherwise would have had if the contested policy, procedure, or regulation had been applied appropriately"); *cf.* 29 U.S.C. § 216(b) (permitting liquidated damages and attorney's fees).

In addition, respondents maintain that because there is no provision in Title 12 of the State Personnel and Pensions Article for grievances by *former* employees, holding them to the "exclusive remedy" of the grievance process would deprive them of their vested right to bring suit over their wage and hour claims; moreover, respondents argue, the interests of judicial economy and consistency of outcomes should give the Circuit Court subject matter jurisdiction for both former and current employees. Respondents also argue that prohibiting this action at law would effect an unconstitutional retroactive application of the law because the controlling law in the State at the time respondents filed this action was the Court of Special Appeals' holding in *Bunch v. Robinson,* 122 Md.App. 437, 712 A.2d 585 (1998), that rights protected by the FLSA

are enforceable in state court and the administrative grievance process is preempted insofar as it is inconsistent with the FLSA. Finally, respondents argue that the State's requirement of secondary employment in the National Guard entitles them to overtime pay under the joint employer provisions of the FLSA. *See* 29 C.F.R. § 791.2.

### III.

It was settled over a hundred years ago that the Eleventh Amendment to the United States Constitution [2] provides a state with immunity to claims arising under federal law and asserted by a citizen of that state in federal court. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), the Supreme Court held that the Eleventh Amendment is applicable to actions in *state* court and that Congress lacked the authority under the Commerce Clause to abrogate a state's sovereign immunity to suits in its own courts. *Alden* made it clear that the FLSA could not constitutionally authorize private suits for damages against a state in state court, as the Act purported to do. *See* 29 U.S.C. § 216(b) ("An action ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees"). The Court also explained in *Alden,* however, that states may consent to private suits in their own courts. 527 U.S. at 755, 119 S.Ct. at 2267, 144 L.Ed.2d at 678–79.

Subsequent to *Alden,* this Court considered in *Robinson v. Bunch,* 367 Md. 432, 788 A.2d 636 (2002), whether Maryland law permits actions against the State in State courts by State employees seeking to enforce their rights to overtime compensation under State or federal law. *Bunch* involved an action

---

2. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

filed in the Circuit Court for Baltimore City by employees and a former employee of the Maryland Department of Public Safety and Correctional Services for damages based on allegations that the State failed to pay for overtime work in violation of the FLSA and Maryland law. We held that the employees were precluded from bringing a direct judicial action because the administrative grievance procedure set forth in §§ 12–101 through 12–405 is the exclusive remedy for compensation disputes such as the overtime claims at issue. *Bunch,* 367 Md. at 446, 788 A.2d at 645. We noted that "the substantive overtime provisions of the [FLSA] are applicable [to State employees], even though the remedial provisions of the federal act are not." 367 Md. at 442, 788 A.2d at 642.

Section § 12–103(b) of the State Personnel and Pensions Article, "Right to bring grievance; exclusiveness of remedy," provides in pertinent part as follows:

"(b) *Remedy exclusive.*—Unless another procedure is provided for by this article, the grievance procedure is the exclusive remedy through which a nontemporary employee in the State Personnel Management System may seek an administrative remedy for violations of the provisions of this article."

We stated in *Bunch* that "[t]he overtime compensation claims of the plaintiffs-respondents are based on alleged violations of 'this article,' namely §§ 8–301 through 8–309 of the State Personnel and Pensions Article."[3] 367 Md. at 446, 788 A.2d at 645. Respondents' overtime claims, like those of the employees in *Bunch,* are based on alleged violations of Subtitle 3, "Overtime Compensation," of Title 8, "Compensation of Employees Subject to Salary Authority of Secretary of Budget

---

3. Section 8–305 provides in pertinent part as follows:
"(a) *In general.*—Except as otherwise provided in this section:
(1) payment for time worked in excess of an employee's normal workweek but not in excess of 40 hours in that workweek shall be made at the employee's regular hourly rate of pay; and
(2) payment for time worked in excess of 40 hours in a workweek shall be made at one and one-half times the employee's regular hourly rate of pay."

and Management," of "this article," the State Personnel and Pensions Article, making the grievance procedure their exclusive remedy. Under the provisions of § 12–103, the reason for an employee working in excess of forty hours in a work week is irrelevant.

Section 14–103 of the State Personnel and Pensions Article establishes that sovereign immunity is not a defense which the State may raise "in any administrative, arbitration, or judicial proceeding involving an employee grievance or hearing that is held under . . . this Division I." Division I encompasses § 8–302(b), which provides for overtime compensation, and Title 12, which sets forth the grievance procedures. In conjunction with § 12–103, which establishes the exclusivity of the grievance procedure remedy, § 14–103 merely operates to permit employees in the State Personnel Management System to invoke the administrative grievance procedure.

Division I, Title 8, Subtitle 3 entitled "Overtime Compensation," § 8–302 of the State Personnel and Pensions Article, provides as follows:

" § 8–302. **Construction and entitlement.**

(a) *Construction of subtitle.*—This subtitle shall be interpreted and applied, to the extent applicable, in accordance with the federal Fair Labor Standards Act.

(b) *Entitlement.*—All employees subject to this subtitle are entitled to the greater of:

(1) the benefits that are provided in this subtitle; or

(2) to the extent applicable, the benefits required by the federal Fair Labor Standards Act."

We implicitly rejected in *Bunch* the argument advanced by respondents in the instant case that State employees are entitled to bring a direct judicial action as a result of the "greater benefits" language in § 8–302. That section's provision that, "to the extent applicable," employees are entitled to benefits provided by the FLSA if those benefits are "greater" than benefits provided under the Article is another way of stating that federal law is the supreme law of the State, anything in the laws of this State to the contrary notwith-

standing.[4] *See* Article 2 of the Maryland Declaration of Rights; U.S. Const. art. VI, cl. 2.[5] A restatement of this important governing principle does nothing to effect a waiver of sovereign immunity.

The instant case is indistinguishable from *Bunch*. Respondents, like the employees in *Bunch*, are or were employees in the State Personnel Management System, subject to the provisions of Title 12 of the State Personnel and Pensions Article. *See* § 12–102. Respondents were required to exhaust their administrative remedies provided by Title 12 before they could seek review of a final administrative decision in circuit court under the Maryland Administrative Procedure Act, Maryland Code (1984, 1999 Repl.Vol., 2003 Cum.Supp.) §§ 10–203 and 10–222 of the State Government Article.

Respondents argue that it would be unjust to hold that the administrative grievance procedure is the sole means by which they can enforce their legal rights to overtime pay because former employees cannot avail themselves of the grievance

---

4. We express no opinion as to whether a successful grievant who is entitled to overtime pay ever may be entitled to liquidated damages or attorney's fees, as permitted by the FLSA. We note, however, that § 8–302(b) does not require it. Section 8–302 refers to the greater of the benefits required by the FLSA or "the benefits that are provided *in this subtitle*," which does not encompass § 12–402, "Remedies available to grievants." (Emphasis added.)

5. Article 2 of the Maryland Declaration of Rights provides as follows:

"The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding."

Article VI of the United States Constitution, in pertinent part, provides as follows:

"This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

process. Respondents contend that former employees are prohibited from pursuing a grievance under Title 12 of the State Personnel and Pensions Article because a "grievance" is defined as "a dispute between an employee and the employee's employer," *see* § 12–101(b)(1), and Title 12 lacks a provision comparable to the one in Title 11 defining an "employee" as either a current or former employee, *see* § 11–101. Whether or not Title 12 of the State Personnel and Pensions Article authorizes grievance actions by former employees, the employee must initiate the grievance procedure within twenty days after either the occurrence of the act that is the basis of the grievance or the time when the employee first knew or reasonably should have known of the act that is the basis of the grievance. *See* § 12–203(b). All the respondents knew of the National Guard requirement upon accepting employment with the State. The fact that they failed to bring a grievance action within the statutorily prescribed time period does not entitle them to bring a direct judicial action against the State now.

In its petition for a writ of certiorari, the State framed the issue for resolution as' whether the Court of Special Appeals erred in holding that *Kram v. Maryland Military Department*, 374 Md. 651, 824 A.2d 99 (2003) overruled *Robinson v. Bunch*, 367 Md. 432, 788 A.2d 636 (2002), and allows a direct judicial action against the State for overtime compensation. We held in *Kram* that Military Department firefighters could not bring a grievance challenging the National Guard membership requirement. *Id.* at 660, 824 A.2d at 104. As we explain *infra*, *Kram* does not change the result in the instant case and did not, *sub silentio*, or otherwise, overrule *Bunch*.

The proceedings culminating in this Court's *Kram* opinion originated in 1999, when twenty-four Military Department airport firefighters, including all but six of the respondents, filed an administrative grievance challenging the National Guard requirement itself, claiming that it violated the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. In the same grievance, the firefighters sought to be paid overtime wages

from the State for their service in the National Guard. They voluntarily withdrew their overtime claim at the hearing, however. The Administrative Law Judge (ALJ) denied the grievance because a grievance may not be pursued to contest standards used in classifying positions and the ALJ determined that the National Guard requirement was such a non-grievable "classification standard." *See* § 12–101(b)(2)(v) of the State Personnel and Pensions Article.[6] The firefighters sought judicial review, and the Circuit Court for Baltimore County, the Court of Special Appeals, and this Court affirmed.

Seizing upon *dicta* in this Court's *Kram* opinion, the Court of Special Appeals, ruling on the case *sub judice,* stated as follows:

"Significantly, the Court of Appeals held in *Kram* 'that the requirement at issue here [i.e., National Guard membership] is a classification standard, and hence not grievable.' Nevertheless, in barring the firefighters' challenge to the condition of employment by way of a grievance proceeding, the Court expressly noted that 'preventing the present grievance action does not necessarily preclude the employees from seeking redress for their perceived injuries.' It added: 'We find only that the Legislature prevented the employees from their present course.'

At the time of the circuit court's decision in this case, it did not have the benefit of the Court of Appeals's decision in *Kram* ... that the firefighters are not entitled to avail themselves of a grievance action in an attempt to challenge the requirement that, as a condition of their State employment, they must maintain membership in the National Guard. Therefore, the circuit court erred in ruling in this

---

6. Section 12–101(b)(2) excepts from the definition of "grievance" any dispute about the following six subject areas:
   "(i) a pay grade or range for a class;
   (ii) the amount or the effective date of a statewide pay increase;
   (iii) the establishment of a class;
   (iv) the assignment of a class to a service category;
   (v) the establishment of classification standards; or
   (vi) an oral reprimand or counseling."

case that the grievance procedure is the exclusive remedy for the claims asserted." (Citations omitted).

The Court of Special Appeals erred in concluding that *Kram* overruled *Bunch* and that the firefighters had a direct judicial action in the Circuit Court. The only issue before this Court in *Kram* was whether the firefighters could use the grievance procedure to challenge the constitutionality of the National Guard requirement; that issue is unrelated to whether the Circuit Court has jurisdiction over these overtime claims. We did not indicate in *Kram* that the firefighters had the option of pursuing a direct judicial action for overtime in circuit court contrary to the express holding of *Bunch*. *Kram* did not overrule *Bunch* and provides no basis for circuit court jurisdiction over these overtime claims.

Contrary to respondents' suggestion, our holding does not effect an unconstitutional retroactive application of the law. Long before respondents filed this judicial action, the Supreme Court issued its opinion in *Alden*, holding that the FLSA could not constitutionally authorize actions such as suits for overtime pay against the states in state courts. The Court of Special Appeals's *Bunch* opinion was under review by this Court when respondents filed their lawsuit.[7] Respondents' argument that this Court should apply the rule of law announced by the Court of Special Appeals in *Bunch* because this Court did not overrule that decision until after respondents brought their direct judicial action, is without merit.

---

7. The Court of Special Appeals decided *Bunch v. Robinson*, 122 Md. App. 437, 712 A.2d 585 (1998) on July 1, 1998. This Court granted the State's petition and issued a writ of certiorari on October 7, 1998. *Robinson v. Bunch*, 351 Md. 285, 718 A.2d 234 (1998). Thereafter, we granted the parties' joint motion to postpone briefing and argument until the Supreme Court decided *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). *Bunch*, 367 Md. at 438, 788 A.2d at 640. After the Supreme Court's decision in *Alden*, we amended the Order granting the certiorari petition to add the issue of whether the Maryland Constitution and various Maryland statutory provisions allowed the plaintiffs to bring suit directly in circuit court. *Id.* at 438–39, 788 A.2d at 640. We heard oral argument on January 7, 2000. We issued our opinion in *Bunch* on January 11, 2002, one day after respondents filed suit in the case *sub judice*.

The filing of a lawsuit does not freeze the state of the law from the date of filing. *Cf. Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 86, 113 S.Ct. 2510, 2512, 125 L.Ed.2d 74, 77 (1993) (holding that a rule of federal constitutional law, once announced and applied with respect to the litigants before the court, "is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the [court's] announcement of the rule").

In sum, our decision in *Bunch* controls the instant case and *Kram* does not change the outcome. Because the Circuit Court lacks jurisdiction over this action, we do not reach the legal issues of whether respondents are "employees" covered by the FLSA when serving in the National Guard and whether the FLSA's joint employment doctrine requires the State to pay overtime wages.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*