873 A.2d 1225

Diane MYERS, et al.

v.

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.

No. 426, Sept. Term, 2004.

Court of Special Appeals of Maryland.

May 4, 2005.

Hillary G. Davis, Towson, for appellant.

Judith Barr (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, ADKINS, MEREDITH, JJ.

MEREDITH, J.

This case concerns the authority of an administrative law judge ("ALJ") to grant relief to a State employee who files a grievance claiming that the employee's position has been incorrectly reclassified. The State contends that, even if the ALJ agrees with the employee that the position has been incorrectly reclassified, the ALJ is limited to ordering that there be a new classification study. The employees who are appellants in this case assert that the ALJ, as the final decision maker in the grievance proceeding, has the authority to order that the employee's classification be changed. The ALJ agreed with the employees. So shall we.

## Background

Title 4 of Md.Code (1996, 2004 Repl.Vol.), State Personnel and Pensions Article ("S.P.P."), § 4–201, *et seq.*, provides for the Secretary of the Department of Budget and Management ("Secretary–DBM") to establish position classifications for State employees. Each employee is entitled to receive a written position description, S.P.P. § 7–102(a), and the duties

assigned to the employee must be "consistent with the duties and responsibilities for the position's assigned class." S.P.P. § 7–102(e)(1).

Prior to May 18, 2000, State employees who handled purchasing and procurement duties generally held positions that were classified as being part of the Agency Buyer series of classifications. In 1999, the Department of Budget and Management ("DBM") created a new classification series that distinguished employees who purchased items using the competitive bidding or negotiation process from those who generally purchased items for their agency without utilizing competitive bidding or negotiation. The new classifications were known as the Agency Procurement Specialist series, published by DBM on May 18, 2000.

The appellants in this case are seven employees who have jobs involving procurement for the Maryland Department of Public Safety and Correctional Services ("DPSCS"), the appellee. Prior to a classification study that was conducted by the DPSCS in 2001, all of the appellants were employed in positions that were classified in the Agency Buyer series. In an effort to determine whether the newly created Agency Procurement Specialist series applied to any of its procurement personnel, in 2001, the DPSCS conducted a study of the classifications of 23 employees holding positions in the Agency Buyer series, including the appellants.

The classification analyst who conducted the DPSCS study requested clarification from the DBM's Division of Salary Administration and Position Classifications as to the distinction between the older Agency Buyer series and the new Agency Procurement Specialist series. In a letter dated March 9, 2001, a classification analyst from the DBM's Division of Salary Administration and Position Classification responded: "Both the Agency Procurement Specialist series and the Agency Buyer series are used for positions performing procurement work. [However,] [t]he Agency Procurement Specialist series was designed to recognize work related to the competitive or negotiated procurement process." In contrast,

"Agency [B]uyers are not responsible for procurements made through the competitive or negotiated process," and "[t]hey do not determine the most appropriate procurement methods to use in accordance with COMAR Title 21."

Based upon the recommendations made at the conclusion of the classification study, the classification of appellant Beverly Smith's position was upgraded from Agency Buyer I to Agency Buyer V. The positions of appellants Diane Myers, Kevin Hunt, and Tracey Lunkin were reclassified from Agency Buyer V to Agency Procurement Specialist II; and the positions of appellants Debra Carty, Jayne Dryden, and Behira Said were reclassified from Agency Buyer IV to Agency Procurement Specialist II.

On September 11, 2001, Smith filed a grievance with the DPSCS, contending that her position "should be reclassified to at least Agency Procurement Specialist II retroactive to the fullest legal extent." On the same date, the other six appellants (all of whom had had their positions reclassified to Agency Procurement Specialist II) jointly filed a grievance with the DPSCS, contending that their positions "should be reclassified to Agency Procurement Specialist Supervisor retroactive to the fullest legal extent."

In accordance with S.P.P. § 12–201(b), the DPSCS agreed to bypass "Step One" of the grievance process (S.P.P. § 12–203). Pursuant to S.P.P. § 12–204, the DPSCS conducted a "Step Two" conference to review the appellants' grievances, but was unable to resolve the grievances. Following the Step Two conference, the DPSCS denied the employees' requests to have their positions further reclassified. As "Step Three" of the grievance process, pursuant to S.P.P. § 12–205, the employees appealed the DPSCS's decision to the Secretary–DBM. A designee of the Secretary–DBM convened a conciliation conference with the parties, but failed to reach a mutually satisfactory settlement. Therefore, as required by S.P.P. § 12–205(b)(2)(ii), the Secretary–DBM referred the matters to the Office of Administrative Hearings ("OAH") to "dispose of the grievance[s] or conduct a hearing" pursuant to S.P.P.

§ 12–205(c). The decision of the OAH "is the final administrative decision," pursuant to S.P.P. § 12–205(c)(2)(ii).

An evidentiary hearing to consider appellants' consolidated grievances was held by the OAH. In a written opinion dated May 22, 2003, the ALJ determined that appellant Smith's "job duties primarily relate to the competitive and/or negotiated procurement process." He also found that appellant Smith and her supervisor, appellant Myers (whose position had been reclassified to Agency Procurement Specialist II as a consequence of the DPSCS study), shared similar job responsibilities. The ALJ further found that in Myers's absence, Smith performed Myers's supervisory duties. Based upon the evidence presented at the administrative hearing, including the DPSCS's review of Smith's position, the DBM's guidance letter of March 9, 2001, and the testimony of the employees and classification analysts who appeared at the hearing, the ALJ concluded that "Ms. Smith should be reclassed to Agency Procurement Specialist II."

With respect to Myers's request that her position be classified as Agency Procurement Specialist Supervisor, the ALJ noted that in order for a position to be classified as Agency Procurement Specialist Supervisor, the employee's duties must include the supervision of someone classified as an Agency Procurement Specialist in the Agency Procurement Specialist series. At the time the DPSCS conducted its classification review of appellant Myers's position, her duties did not include the supervision of anyone classified in the Agency Procurement Specialist series. Accordingly, the DPSCS had determined that Myers's position could not be reclassified to Agency Procurement Specialist Supervisor. Nonetheless, as a consequence of the ALJ's conclusion that Smith's position should be reclassified to Agency Procurement Specialist II, appellant Myers's duties do include supervision of an employee classified in the Agency Procurement Specialist series. Therefore, the ALJ concluded that appellant Myers's duties now qualified her position to be reclassified to Agency Procurement Specialist Supervisor. The ALJ further ordered "that Beverly Smith and Diane Myers should receive

back pay from September 11, 2000." (September 11, 2000, was one year prior to the date appellants filed their grievances.)

With respect to the remaining five employees seeking reclassification from Agency Procurement Specialist II to Agency Procurement Specialist Supervisor, the ALJ denied their grievances. Although there was some evidence to suggest that appellants Hunt, Lunkin, Carty, Dryden, and Said performed functions similar to appellant Myers, none of these other five employees supervised employees whose positions were classified in the Agency Procurement Specialist series. Consequently, the ALJ denied the requests of Hunt, Lunkin, Carty, Dryden, and Said to have their positions reclassified to Agency Procurement Specialist Supervisor.

The DPSCS filed a petition with the Circuit Court for Baltimore County, requesting judicial review of the ALJ's decision to reclassify appellants Smith and Myers. In a cross-petition, the five appellants whose grievances were denied sought judicial review of the ALJ's decision not to reclassify their positions.

In a written opinion filed April 1, 2004, the circuit court concluded that the ALJ exceeded the scope of his authority when he ordered that Smith's and Myers's positions be reclassified. Based upon the DPSCS's contention that reclassification was not a remedy available to the ALJ under S.P.P § 12–402, the circuit court stated:

> This Court finds that although ALJ Dewberry had sufficient evidence to support a finding that Ms. Smith and Ms. Myers should be reclassified, he exceeded his scope of authority in actually ordering the reclassification. Consequently, this Court modifies the decision of the ALJ on the issue of Ms. Smith and Ms. [Myers's] reclassification and orders ALJ Dewberry to remand the case to the Department [i.e., DPSCS] to restudy Ms. Smith's and Ms. [Myers's] positions in accordance with his findings below.

\* \* \*

This Court finds no error in the ALJ's determination that Ms. Smith was **entitled** to reclassification as an APS II and as a result of Ms. Smith's reclassification, Ms. Myers was also entitled to reclassification as an APS–Supervisor.

(Emphasis in original.) The circuit court affirmed the ALJ's decision not to reclassify the remaining five appellants. All seven employees noted an appeal to this Court.

## I. ALJ's Order to Reclassify Positions of Smith and Myers

■■■ In an appeal from the circuit court's ruling upon a petition for judicial review of an administrative decision, we look through the circuit court's decision and review the decision of the agency. *Dept. of Health v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051 (2001) ("it is the final decision of the final decision maker at the administrative level, not that of the reviewing court, that is subject to judicial review"). The standard of review was recently summarized by the Court of Appeals as follows:

Many Maryland cases have set out the standard for judicial review of administrative agency decisions. We have often stated that a court ordinarily will review the actions of an administrative agency only to determine if its conclusions are arbitrary, capricious, or contrary to law. In reviewing factual determinations, or mixed questions of law and fact, we apply the "substantial evidence" standard set forth in § 10–222(h)(3)(v) of the State Government Article, reversing the agency's findings only if we hold that "a reasoning mind" could not have reached them on the record before the agency. *Charles County v. Vann,* 382 Md. 286, 295, 855 A.2d 313, 318 (2004); *Board of Physician v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380–81 (1999). *See Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512–13, 390 A.2d 1119, 1123–24 (1978).

In reviewing an agency's legal conclusions, on the other hand, we determine under § 10–222(h)(3)(iv) of the State Government Article whether the conclusions are "affected by any other error of law." Accordingly, we review *de*

*novo. Spencer v. State Board of Pharmacy,* 380 Md. 515, 528, 846 A.2d 341, 348–49 (2004). While we frequently give weight to an agency's experience in interpretation of a statute that it administers, it is always within our prerogative to determine whether an agency's conclusions of law are correct. *Christopher v. Montgomery County Dept. of Health & Human Services,* 381 Md. 188, 198, 849 A.2d 46, 52 (2004); *Baltimore Lutheran High Sch. v. Empl. Sec. Adm.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985).

In reviewing the decision of an administrative agency, we evaluate the decision of the agency under the same statutory standards as would the circuit court. *Spencer,* 380 Md. at 523–24, 846 A.2d at 346 (2004).

*Kushell v. Department of Natural Resources,* 385 Md. 563, 870 A.2d 186, Slip Opinion at 12–13 (2005).

Consequently, the question of law for us to decide with respect to appellants Smith and Myers is whether the ALJ exceeded his authority in issuing an order that their positions be reclassified. The DPSCS contends that the ALJ had no authority to order reclassification of a position, and that even if the ALJ's conclusion that Smith's and Myers's positions had been incorrectly classified was supported by substantial evidence, the only remedy available to the ALJ was to order that their positions be restudied by the agency.

The resolution of this issue turns upon the statutory construction of S.P.P § 12–402. Captioned "Remedies available to grievants," that section provides:

(a) *In general.*—Except as provided in subsection (b) of this section, the remedies available to a grievant under this title are limited to the restoration of the rights, pay, status, or benefits that the grievant otherwise would have had if the contested policy, procedure, or regulation had been applied appropriately as determined by the final decision maker.

(b) *Back pay.*—(1) A decision maker at Step Two or Step Three of the grievance procedure may order an appointing authority to grant back pay.

(2) (i) In a reclassification grievance back pay may be awarded for a period not exceeding 1 year before the grievance procedure was initiated.

(ii) A back pay order under this paragraph is in the discretion of the Secretary and the Office of Administrative Hearings.

(3) Subject to the limitations in Title 14, Subtitle 2 of this article, an appointing authority shall carry out a back pay order issued under this subsection.

The DPSCS asserts that reclassification of an employee's position is not among the potential remedies expressly enumerated in § 12–402(a) or (b). Because the statute states that "the remedies available to a grievant . . . are limited to . . ." those spelled out in § 12–402(a) and (b), the DPSCS contends that reclassification was not an option for the ALJ.

The fatal flaw in the DSPSC's logic is that § 12–402(b)(2) expressly contemplates an award of up to one year of back pay "[i]n a reclassification grievance." If the DSPSC were correct that an ALJ has no authority to order reclassification of a grievant's position, there would be little occasion for an award of back pay in a reclassification grievance.

■■■ The statutory scheme that provides an employee an opportunity to challenge the correctness of a position reclassification requires the employee to pursue the challenge by way of a grievance. S.P.P. § 12–103(b) provides that "the grievance procedure is the exclusive remedy through which a nontemporary employee in the State Personnel Management System may seek an administrative remedy for violations of the provisions of this article." *See Maryland Military v. Cherry,* 382 Md. 117, 123–24, 854 A.2d 1200 (2004); *Robinson v. Bunch,* 367 Md. 432, 445, 788 A.2d 636 (2002).

S.P.P. § 12–101(c)(2) provides that the term "grievance" does not include "a dispute about: (i) a pay grade or range for a class; (ii) the amount or the effective date of a statewide pay increase; (iii) the establishment of a class; (iv) the assignment of a class to a service category; (v) the establishment of classification standards; or (vi) an oral reprimand or counsel-

ing." These exclusions, however, do not preclude an individual employee from filing a grievance to pursue a complaint that the position classification standards have been incorrectly applied to that employee's own position. *Cf. Kram v. Maryland Military,* 146 Md.App. 407, 413, 807 A.2d 120 (2002), *aff'd* 374 Md. 651, 824 A.2d 99 (2003) ("by excluding a dispute about 'the establishment of classification standards' from the grievance procedure, the legislature did not intend to permit employees to utilize that procedure to challenge DBM's exercise of its classification power").

As the Court of Appeals stated in *Briscoe v. Prince George's County Health Dep't,* 323 Md. 439, 453–54, 593 A.2d 1109 (1991):

> [T]he general principle set forth in [Art. 64A,] § 27 [a predecessor of S.P.P. § 4–201(b)], that positions of "comparable duties, experience, responsibilities and authority shall be paid comparable salaries," enunciates a public policy that the Department of Personnel has applied in grievance proceedings. The principle has been used by the Department of Personnel as a basis for determining, in a grievance proceeding, that certain positions had been misclassified and should be reclassified.

*See also Comptroller v. Nelson,* 345 Md. 706, 713, 694 A.2d 468 (1997) (S.P.P §§ 14–201 through 14–204 "set forth a procedure by which the General Assembly may . . . appropriate funds for the satisfaction of reclassification and back pay awards rendered in administrative proceedings").

Reclassification grievances are expressly contemplated by COMAR 17.04.02.01 and 17.04.06.05.[1] COMAR 17.04.02.01

---

1. COMAR 17.04.02.01 provides:
 A. The classification of positions is governed by State Personnel and Pensions Article, Title 4, Subtitle 2, Annotated Code of Maryland.
 B. A grievance involving a position reclassification is governed by State Personnel and Pensions Article, §§ 7–102(e), 12–101(b)(2), and 12–205, Annotated Code of Maryland, and COMAR 17.04.06.05.
 COMAR 17.04.06.05 provides:
 If a grievance is based on a position's classification, the head of the principal unit shall assure that a classification study of the employee's

indicates that S.P.P. § 12–205 is one of the statutory provisions that govern a "grievance involving a position reclassification." Subsection 12–205(b)(2)(ii) provides that in Step Three of a grievance, if the Secretary–DBM or his designee cannot settle the dispute, then the Secretary–DBM "shall refer the grievance to the Office of Administrative Hearings." Following such mandatory referral, S.P.P § 12–205(c)(2)(i) authorizes the OAH to "grant any appropriate remedy under § 12–402." S.P.P. § 12–401 requires the ALJ to "determine the: (1) proper interpretation or application of the policy, procedure, or regulation involved in the grievance; and (2) appropriate remedy." Further, S.P.P § 12–205(c)(2)(ii) provides that "[t]he decision of the Office of Administrative Hearings is the final administrative decision" in a grievance proceeding.

On appeal, the DPSCS has not contended that the ALJ erred in concluding from the evidence that Smith and Myers had been incorrectly classified. The circuit court found no error in the ALJ's determination that Smith and Myers were entitled to reclassification, and the DPSCS has not challenged that conclusion on appeal. Rather, the DPSCS contends that the plain language of S.P.P. § 12–402 precludes the ALJ from ordering the agency to reclassify the positions.

Because the ALJ was authorized to grant any remedy permitted by S.P.P. § 12–402, we must determine whether that statute would permit the final decision maker to order that the grievants' position classifications be changed based upon the evidence presented at the administrative hearing. Although we first seek to interpret a statute by attempting to discern the plain meaning of the words employed by the General Assembly, "[t]he plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given

position has been made within 1 year of the date on which the grievance was initiated. A back pay award in a reclassification grievance is governed by the provisions of State Personnel and Pensions Article, § 12–402(b)(2), Annotated Code of Maryland.

effect. *Deville [v. State]*, 383 Md. [217,] 223, 858 A.2d at 487 [ (2004) ]; *Navarro–Monzo v. Washington Adventist*, 380 Md. 195, 204, 844 A.2d 406, 411 (2004)." *Kushell, supra,* 385 Md. at 577, 870 A.2d 186. Moreover, questions of statutory construction are "completely subject to review by the courts," which may give some deference to the agency's interpretation but are not bound by the agency's legal conclusions. *Dept. of Health, supra,* 364 Md. at 118, 771 A.2d 1051.

Upon reviewing S.P.P. § 12–402 in context as part of the statutory scheme governing employee grievances relative to reclassifications, we do not agree with the DPSCS's contention that the phrase "restoration of the rights, pay, status, or benefits that the grievant otherwise would have had" is limited to situations in which the grievant is put back into a position previously held (as opposed to having the grievant's position upgraded to a new level, which was the relief sought by appellants Smith and Myers). Rather, the statutory scheme provides for remedies of a restitutionary nature that put the employee in the same position the employee would have enjoyed if the "contested policy, procedure, or regulation had been applied appropriately as determined by the final decision maker."

 In a reclassification grievance, the remedy is limited to back pay (which can be extended back no more than one year prior to the date the grievance was filed), plus being placed in the same position with respect to the "rights, . . . status, [and] benefits" the employee would have had if the position had been properly classified in the first instance. The goal is to restore to the employee the status and benefits the employee would have had if no error had been made. Although the statute permits the ALJ to place the employee in a status comparable to the status the employee would have experienced had the position been correctly reclassified, S.P.P. § 12–402 does limit available remedies by precluding a grievant from seeking relief such as compensatory damages for emotional distress, consequential damages, or punitive damages.

Consequently, we conclude that the ALJ did not exceed his authority as the final decision maker in these grievances by ordering that the positions of appellants Smith and Myers be reclassified, and that they be granted back pay accounting from one year prior to the date their grievances were filed. We conclude that such an order provided a remedy that restored to grievants Smith and Myers "the rights, pay, status, [and] benefits that the grievant[s] otherwise would have had if the contested [reclassification] had been applied appropriately as determined by the final decision maker." Such an order is within the scope of remedies authorized by § 12–402. Because there was no error of law in the ALJ's order as to appellants Smith and Myers, the circuit court erred in modifying that portion of the ruling of the OAH.

## II.

### Reclassification of Remaining Appellants

In order for a position to be classified as an Agency Procurement Specialist Supervisor, the employee must supervise someone in the Agency Procurement Specialist series. The record reflects that none of the remaining five appellants (Hunt, Lunkin, Carty, Dryden, and Said) supervised any employee in a position classified in the Agency Procurement Specialist series. These appellants offered evidence that each of them performs functions comparable to appellant Myers, including supervising assistants who perform the same sort of procurement functions as appellant Smith. They contend that their positions should be reclassified in the same manner the ALJ found Myers's position should be reclassified.

As the circuit court aptly pointed out in rejecting this contention, "The distinction to be made is that Ms. Smith filed a grievance while the remaining Grievants' subordinates did not.... [A] person cannot become an APS–Supervisor if they are not supervising [an] APS Series person." Because there was no evidence in the record that Hunt, Lunkin, Carty, Dryden, or Said supervise any subordinates whose positions are currently classified in the Agency Procurement Specialist

Series, their requests that their positions be reclassified to Agency Procurement Specialist Supervisor were properly rejected by the ALJ. Accordingly, we affirm that portion of the circuit court's judgment that affirmed the ALJ's ruling as to appellants Hunt, Lunkin, Carty, Dryden, and Said.

**JUDGMENT AFFIRMED AS TO APPELLANTS HUNT, LUNKIN, CARTY, DRYDEN, AND SAID; JUDGMENT VACATED AS TO APPELLANTS SMITH AND MYERS; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEE.**