947 A.2d 135

**Mireille ZIMMER–RUBERT**

v.

**BOARD OF EDUCATION OF BALTIMORE COUNTY.**

**No. 838, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 5, 2008.

**590**

Jon B. Stolarz, Baltimore, for appellant.

Leslie R. Stellman (Shani K. Whisonant, Hodes, Pessin & Katz, PA, on brief), Towson, for appellee.

Panel DAVIS, ADKINS, RASIN, GALE E. (specially assigned), JJ.

DAVIS, J.

Appellant, Mireille Zimmer–Rubert, filed suit in the Circuit Court for Baltimore County against appellee, the Board of Education for Baltimore County, to recover $100,000 in compensatory damages for age discrimination based upon the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (Supp. III 1994). Pursuant to Maryland Rule 2–322, appellee filed a Motion to Dismiss for insufficiency of service of process, lack of jurisdiction and failure to state a claim upon which relief can be granted. The circuit court

granted appellee's motion and dismissed appellant's claim without prejudice. This appeal was thereafter timely noted in which appellant presents the following issues for our review:

I. Whether [appellee] is a local autonomous entity, and not a state agency, making it subject to suit under the [ADEA].

II. Whether the [c]ircuit [c]ourt erred when it determined that [Md.Code Ann., Cts. & Jud. Proc. § 5–518(c) (1974, 2001 Repl.Vol.) ][1] did not waive sovereign immunity for [appellee].

For the reasons that follow, we conclude that, although appellee is a state agency, Md.Code Ann., Cts. & Jud. Proc. § 5–518(c) (1974, 2001 Repl.Vol.) constitutes a specific waiver of sovereign immunity for recovery of damages of up to $100,000. Consequently, we shall reverse the judgment of the Circuit Court for Baltimore County and remand for further proceedings.

## FACTUAL BACKGROUND

Born on January 16, 1949, appellant is an experienced educator qualified to teach English, Spanish, German and French. In March of 2004, appellant filed an application to teach foreign language in appellee's high schools. Unsuccessful in her quest to secure a teaching position and, upon learning that young teachers were hired to fill vacant positions for which she was qualified, appellant filed a Charge of Discrimination with the Equal Employment Opportunity Commission. On March 17, 2006, appellant was granted a Right to Sue letter.

Within ninety days, appellant filed a Complaint in the circuit court[2] against appellee, alleging age discrimination and "de-

---

**1.** Unless otherwise indicated, all subsequent statutory references herein shall be to Md.Code Ann., Courts and Judicial Proceedings Article § 5–518(c).

**2.** The ADEA provides for concurrent federal and State jurisdiction to hear complaints arising under the statute. 29 U.S.C. § 626(c).

manding judgment for compensatory damages in the amount of $100,000, attorney fees, pursuant to 29 U.S.C. § 626(b), interest and the costs of [the] action." Appellee subsequently moved to dismiss appellant's suit on the grounds stated *supra.*

A hearing on appellee's motion was held on May 25, 2007. In a ruling from the bench on that same day, the trial court granted appellee's motion, finding that appellant's ADEA claim was barred by appellee's Eleventh Amendment immunity. Explaining her decision, the trial judge opined that, "on further reflection in looking at [C.J. § 5–518], as well as *[Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ], that the 11th Amendment immunity must be specifically waived, and it's not."

## STANDARD OF REVIEW

In reviewing a motion to dismiss, "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 475, 860 A.2d 871 (2004). We will only find that dismissal was proper "if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Sprenger v. Public Serv. Comm'n of Maryland,* 400 Md. 1, 21, 926 A.2d 238 (2007). Thus, our task is confined to determining whether the trial court was legally correct in its decision to dismiss. *Id.*

## ANALYSIS

## I

In a four-prong argument, appellant argues that, when considering the factors for determining whether an entity is an agency of the State for Eleventh Amendment purposes, "the overwhelming and inescapable conclusion is that appellee is not a[S]tate agency, but an autonomous entity not entitled to sovereign immunity protection." Appellee's argument is two-fold. Preliminarily, appellee maintains that the issue *sub*

*judice* is not properly before us on appeal. Appellee contends, however, that, if we choose to address this issue, the Court of Appeals and the United States District Court for the District of Maryland have consistently held that Maryland school boards are State agencies and, thus, afforded Eleventh Amendment immunity protections.[3]

Throughout the May 25 hearing and responsive pleadings filed, appellant argued that the General Assembly prohibited the county boards of education from raising the defense of sovereign immunity to any claim of $100,000 or less and, therefore, appellee was barred from asserting Eleventh Amendment immunity. Upon our review of the record, we found no instances in which appellant challenged the "State agency" status of appellee.

Maryland Rule 8–131(a) provides:

Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

*See In re Katherine C.*, 390 Md. 554, 560, 890 A.2d 295 (2006) (quoting *State v. Bell*, 334 Md. 178, 189, 638 A.2d 107 (1994)) (The primary purpose of Rule 8–131(a) is "to ensure fairness for all parties in a case and to promote the orderly administration of law.").

Although appellant never raised the issue of whether appellee is a local autonomous entity or a State agency, the trial court, in finding that C.J. § 5–518(c) did not specifically waive

---

**3.** Appellee is joined in this view by the Maryland Association of Boards of Education (MABE), which has submitted an amicus curiae brief. MABE is a private, non-profit organization, of which all twenty-four Maryland school boards are members. Because the issues presented have Statewide legal and fiscal importance for all school boards throughout the State, MABE provides additional support for appellee's argument that appellee is an arm of the State and that C.J. § 5–518(c) does not abrogate a county school boards' entitlement to protections under the Eleventh Amendment.

Eleventh Amendment immunity, made a threshold assumption that appellee is an "arm of the State." [4] *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141–44, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (opining that Eleventh Amendment immunity is only available to states and "state entities").

In order to review the propriety of the trial court's ruling, we must determine whether appellee is a state entity entitled to Eleventh Amendment protections. *See Weatherly v. Great Coastal Express Co.*, 164 Md.App. 354, 367, 883 A.2d 924 (2005) (holding that "critical to our determination of an issue on appeal is the trial court's opportunity to consider the issue"). Furthermore, for this Court to remand the issue *sub judice* to the trial court for "full consideration" would be a waste of judicial resources. In an effort to avoid the expense and delay of another appeal, we shall determine whether appellee is an arm of the State or a local autonomous entity for the purposes of the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court, in its interpretation of the Amendment, has held that it "largely shields [s]tates from suit in federal court without their consent, leaving parties with claims against a[s]tate to present them, if the [s]tate permits, in the [s]tate's own tribunals." *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). Similarly, the Court of Appeals has opined, "It was settled over a hundred years ago that the Eleventh Amendment to the United States Constitution provides a state with immunity to claims arising under federal law and asserted by a citizen of that state in federal court." *Maryland Military Dep't v. Cherry*, 382 Md. 117, 122, 854 A.2d 1200 (2004).

---

**4.** We shall use "arm of the State" and "State agency" interchangeably.

■ While "[t]he bar of the Eleventh Amendment to suit in federal courts extends to states and state officials," it "does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (internal citations omitted). Only the states themselves or a state agency or instrumentality that functions as an "arm of the state" is entitled to invoke sovereign immunity or the immunity afforded by the Eleventh Amendment. *See Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *see also Ram Ditta v. Maryland Nat. Capital Park and Planning Comm'n,* 822 F.2d 456, 457 (4th Cir.1987) (holding that, by its terms, the Eleventh Amendment applies only to "one of the United States" and "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power' ").

■ Determining whether appellee is an arm or instrumentality of the State, entitled to the protections of the Eleventh Amendment, or a county or local agency, to which immunity does not apply, requires careful scrutiny. The federal courts have suggested several factors in ascertaining whether an entity is the *alter ego* of the state. The principal factor, upon which courts have virtually always relied, is whether the state treasury will be responsible for paying any judgment that might be awarded against the entity. *Lewis v. Bd. Educ. of Talbot County,* 262 F.Supp.2d 608, 612 (D.Md.2003). In the case *sub judice,* it is clear that a judgment in appellant's favor would not have a direct impact upon the State treasury. Accordingly, our inquiry focuses on three critical factors, which may provide a sufficient nexus between appellee and the State so that appellant's suit against appellee would amount to a suit against the State:

> (1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns-whether local or statewide-with which the entity is involved; and (3) the manner in which State law treats the entity.

*Id.* (citing *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir.2001)).

In *Lewis,* a former employee of the Board of Education of Talbot County brought suit against the Board and its agents for breach of contract, wrongful discharge, promissory estoppel and violations of federal and state constitutional rights. *Lewis,* 262 F.Supp.2d at 610. The Board asserted, *inter alia,* that it was protected from suit by sovereign immunity, pursuant to the Eleventh Amendment. *Id.* at 612. The federal court concluded that the Board was entitled to sovereign immunity with respect to all claims, because it was an arm of the State. *Id.* at 612–14. Addressing the Board's autonomy, the court found:

Among other things, the Talbot County Board's members are appointed by the Governor of Maryland, not locally elected.[5] *See* [Md.Code Ann., Educ. § 3–108 (1978, 2006 Repl.Vol.) ].[6] In Maryland, the Board may buy, sell, and hold property only with the approval of the State Superintendent. *See* [Educ. § 4–115]. Each new school established by the Talbot County Board becomes a "part of the State program of public education." [Educ. § 4–109]. The Board's employment and teacher certification practices are more closely regulated in Maryland than those of the boards in North Carolina.[7] *See, e.g.,* [Educ. §§ 6–202 & 4–205(c) ] (the [S]tate, through the State Board of Education, is the

---

**5.** Like the Board of Education in Talbot County, the members comprising appellee are appointed by the Governor of Maryland. Educ. §§ 3–108, 3–109, 3–114.

**6.** Unless otherwise indicated, all subsequent statutory references herein shall be to the Maryland Code, Education Article.

**7.** In *Cash, supra,* the Court of Appeals for the Fourth Circuit conducted a thorough review of North Carolina's system of public education and found that the Granville County Board was not a state entity. While the judge acknowledged that *Cash* strongly informed his analysis, he held that *Cash* was not dispositive, opining that *"Cash* lays out the test to determine whether suit against a school board essentially constitutes suit against the state, but *[Cash]* does not imply that county school boards in other states should automatically be denied sovereign immunity." *Lewis,* 262 F.Supp.2d at 613.

ultimate judge of the validity of dismissals for both professional and non-professional employees); Md. Regs.Code tit. 13A § 07.02.01 ( [S]tate controls form of contract for certificated employees); Md. Regs.Code tit. 13A §§ 12, *et seq.* ( [S]tate defines and enforces teacher certification requirements). While both boards exercise some budgetary discretion, the Talbot County board must submit to an annual audit conducted by the. [S]tate. *See* [Educ. § 5–109]. Moreover, the State of Maryland retains the power to reconstitute and oversee the operation of schools that do not meet [S]tate standards for student performance. *See* Md. Regs.Code tit. 13A § 01.04.08.

*Id.* at 613.

Similarly, in *Jones v. Frederick County Bd. of Educ.,* 689 F.Supp. 535, 538 (D.Md.1988), the United States District Court for the District of Maryland concluded that the Frederick County Board of Education was an agent of the State, entitled to Eleventh Amendment immunity, reasoning

Maryland law creates the county boards of education and governs their composition and membership. The statute requires the county boards to carry out the applicable provisions of [the Education Article of Maryland] and the bylaws, rules, regulations, and policies of the State Board [of Education]. The county boards must obtain the [S]tate's approval regarding the establishment of schools, acquisition or disposition of property, construction or renovation of buildings, and curriculum. The [S]tate appropriates substantial funds to support the county boards. In return, the county boards must acquiesce to an annual audit and submit an annual budget to the [S]tate.

*Id.* at 537–38 (internal citations and quotations omitted); *see, e.g., Adams v. Calvert County Pub. Schs.,* 201 F.Supp.2d 516, 521 (D.Md.2002) ("[Calvert County Public Schools are] immune from suit for monetary damages under the ADEA"); *Biggs v. Bd. of Educ. of Cecil County,* 229 F.Supp.2d 437, 444 (D.Md.2002) ("[T]he local school board is a state agency entitled to invoke the protections of Eleventh Amendment

immunity"); *Dunn v. Baltimore County Bd. of Educ.*, 83 F.Supp.2d 611 (D.Md.2000) (dismissing claim pursuant to ADEA because Baltimore County Board of Education is an agency of the State and, thus, immune from suit); *Rosenfeld v. Montgomery County Pub. Schs.*, 41 F.Supp.2d 581, 586 (D.Md.1999) ("[Montgomery County Public Schools] and its members, in their official capacities, are [S]tate entities.").

Considering whether appellee's scope of concern is local or statewide in nature, we note that the public school system in Maryland is a comprehensive statewide system, created by the General Assembly in conformance with the mandate of Article VIII, § 1 of the Maryland Constitution to establish, throughout the State, a thorough and efficient system of free public schools. Twenty-four county boards were thereafter created by the General Assembly as an integral part of that state system. Educ. § 3–103. These county boards are subject to intensive supervision by the State Board of Education in virtually every aspect of their operations, which in turn affects the educational policy and administration of the entire public school system.

Notwithstanding the supervision by the State Board of Education, each county board is charged with maintaining and improving the local education system. Educ. § 4–101 (providing that "[e]ducational matters that affect the counties shall be under the control of a county board of education in each county" and each board "shall seek in every way to promote the interests of the schools under its jurisdiction"). Each board also determines the educational policies of the county school system. § 4–108(3). Although the "scope of concern" factor tilts both for and against a finding of sovereign immunity, the degree of control that the State exercises over appellee and the State's treatment of appellee, as we shall explain *infra*, clearly outweighs this factor.

The Court of Appeals undoubtedly considers county school boards instrumentalities of the State rather than independent, local bodies. *See, e.g., State v. Bd. of Educ. of Montgomery County*, 346 Md. 633, 635 n. 1, 697 A.2d 1334 (1997) ("The

various county boards of education are state agencies."); *Bd. of Educ. of Prince George's County v. Secretary of Personnel,* 317 Md. 34, 44 n. 5, 562 A.2d 700 (1989) ("It is settled that county boards of education are state agencies."); *Bd. of Educ. of Prince George's County v. Prince George's County Educators' Ass'n,* 309 Md. 85, 95 n. 3, 522 A.2d 931 (1987) ("County boards of education are, of course, state agencies and not agencies of the county government."); *Montgomery County Educ. Ass'n v. Bd. of Educ. of Montgomery County,* 311 Md. 303, 317, 534 A.2d 980 (1987) (recognizing the local boards as state agencies); *McCarthy v. Bd. of Educ. of Anne Arundel County,* 280 Md. 634, 639–50, 374 A.2d 1135 (1977) (examining the history of Maryland public education from colonial times, through the Constitutions of 1864 and 1867 and the concomitant statutes to conclude that the Board of Education of Anne Arundel County is a State agency); *Bd. of Educ. of Montgomery County v. Montgomery County,* 237 Md. 191, 197, 205 A.2d 202 (1964) (noting the local school boards are not a branch of the county government nor an agency under its control); *see also Norville v. Anne Arundel County Bd. of Educ.,* 160 Md.App. 12, 862 A.2d 477 (2004), *vacated on other grounds,* 390 Md. 93, 887 A.2d 1029 (2005) (extensively discussing and ultimately holding that the Anne Arundel Board of Education is an arm of the State for purposes of Eleventh Amendment immunity).

Appellant, however, contends that these "earlier decisions" of the Court of Appeals rely upon the basis of *stare decisis* and not an in-depth analysis in holding that county boards of education are State agencies. In support of her proposition, appellant places considerable emphasis on *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.,* 358 Md. 129, 747 A.2d 625 (2000), in which Judge Wilner wrote: "In terms of their composition, jurisdiction, funding, and focus, [the county schools boards] clearly have a local flavor." Appellant's reliance on *Chesapeake Charter, Inc.,* however, is misplaced as the case suggests to us that, under very limited circumstances, a county board of education in Maryland is to

be treated as a local agency rather than as an arm of the State.

*Chesapeake Charter, Inc.* involved "a procurement dispute" between three school bus contractors and the Anne Arundel County Board of Education. *Id.* at 131, 747 A.2d 625. The Court had to determine whether the procurement of services by a county board of education was subject to the State's General Procurement Law. The Court recognized that county school boards have consistently been regarded as State agencies, but carved out a particular area in which a board is not deemed an agency of the State, holding that "[a]lthough legally State agencies ... they are not normally regarded, for structural or budgetary purposes, as units within the Executive Branch of the State government." *Id.* at 137, 747 A.2d 625.

After reviewing the history of the General Procurement Law and the Education Article, the Court concluded that a county school board is not a "unit" under State procurement law. *Id.* at 145–46, 747 A.2d 625. As we read *Chesapeake Charter Inc.,* the Court left intact the principle that county school boards are ordinarily state agencies. If the case were to signal a change in regard to the Court's longstanding history of holding that county school boards are State entities, the Court of Appeals would have, with specificity, made that known. *See Norville,* 160 Md.App. at 59, 862 A.2d 477 (concluding that the Court of Appeals recognized only a limited exception with respect to budgetary matters and procurement, but left virtually intact the principle that county boards are ordinarily considered arms of the State).

Statutorily, Maryland does not include county school boards within the definition of "local government" in the Local Government Tort Claims Act. C.J. § 5–301. Furthermore, upon reviewing the legislative scheme governing public education in Maryland, it is clear that, while broad authority is conferred upon county school boards, their respective powers are limited by the State. *See Norville,* 160 Md.App. at 45–50, 862 A.2d 477 (providing an in-depth discussion of the legislative scheme

governing public education in Maryland). For instance, considerable control over matters of personnel are conferred upon county boards. On the other hand, all teachers in the State have identical contracts on forms mandated by the State Board, *see* COMAR 13A.07.02.01B, and the State Board of Education has the final word on local employee termination appeals brought by certified employees. *See* Educ. § 6–202(a)(4). Moreover, the State Superintendent has the *sole* authority to terminate a county superintendent. Educ. § 4–201(e) (providing the State Superintendent with the sole authority to remove a county superintendent from office); *see also* Educ. § 4–201(c)(2) (setting forth that the "appointment" of a county superintendent is not valid unless approved in writing by the State Superintendent).

County boards have the power to hold property, Educ. § 4–114, and to condemn property without State approval. Educ. § 4–119. In addition, a county school board may consolidate schools, Educ. § 4–120, and enter into cooperative agreements for the joint administration of programs. Educ. § 4–123. The State, however, retains supervisory control over local development of school property. Although county boards may purchase real property, build and remodel school buildings and select land for school sites, they may only do so with the approval of the State Superintendent of Schools. Educ. §§ 2–303(f), 4–115, 4–116.

Furthermore, even though Maryland's twenty-four county boards of education enjoy considerable latitude in budgetary matters, Educ. §§ 5–102, 5–103, the boards have no independent taxing authority. Consequently, Maryland school boards must rely completely upon federal, state and local government funding to carry out the educational programs mandated by the State Board. Each year, "Subject to the rules and regulations of the State Board and with the advice of the county superintendent," each county prepares an annual budget in accordance with the operating and capital budget categories prescribed by statute. Educ. § 5–101. Discounting federal funds, the financing for the operating budgets of the school boards is shared between the State and each county

pursuant to statutory mandates. Educ. §§ 5–101, 5–202, *et seq.;* COMAR 13A.02.05.01. In calculating the amount of state funding for school system operating budgets, the Education Article sets forth a "wealth equalization" process whereby each county's net taxable income is calculated so that school systems in counties with a relatively smaller tax base receive a larger proportion of State funding. *See Hornbeck v. Somerset County Bd. of Educ.,* 295 Md. 597, 620–32, 458 A.2d 758 (1983) (describing Maryland's formula for State school budgeting and holding that Maryland's Constitution and Declaration of Rights requires "an adequate education measured by contemporary educational standards").

Given the pervasive State control over all aspects of Maryland public education and following the clear precedent of the Court of Appeals and the United States District Court for the District of Maryland, we hold that appellee is a State agency. Maryland boards of education have never been autonomous local entities as suggested by appellant, but have been, since their inception, arms of the State and, therefore, immune from suit under the Eleventh Amendment.

## II

Appellant argues that, even if appellee is a State agency, C.J. § 5–518(c) clearly and unambiguously abrogates sovereign immunity for any claim, up to $100,000, against a county board of education. Therefore, according to appellant, appellee is barred from asserting Eleventh Amendment immunity as a defense to her claim. Appellee, on the other hand, posits that appellant appears to "confuse and conflate" the notions of "Eleventh Amendment immunity" and "sovereign immunity." Because there is a clear distinction between the State's "sovereign immunity," as contemplated by C.J. § 5–518(c) and "constitutional immunity" afforded to the State and State entities by the Eleventh Amendment, appellee argues that the statute's partial waiver of sovereign immunity does not constitute an unequivocal waiver of its Eleventh Amendment immunity from liability under the ADEA.

At the outset, we find it useful to distinguish the related but not identical concepts of the State's sovereign immunity and Eleventh Amendment immunity. The Eleventh Amendment is "rooted in a recognition that the [s]tates, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). The Amendment was adopted for "twin reasons": (1) "the [s]tates' fears that federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin," and (2) to emphasize "the integrity retained by each [s]tate in our federal system." *Id.*

■ Sovereign immunity "derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden v. Maine*, 527 U.S. 706, 728, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The *Alden* Court acknowledged that the Supreme Court has "sometimes referred to the [s]tates' immunity from suit as 'Eleventh Amendment immunity,'" but that phrase, while a "convenient shorthand," is also something of a "misnomer" for "sovereign immunity of the [s]tates neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.* Expounding upon the difference, the Supreme Court wrote:

Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the [s]tates' immunity from suit is a fundamental aspect of the sovereignty which the [s]tates enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other [s]tates) except as altered by the plan of the Convention or certain constitutional Amendments.

*Id.; See Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 753, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("[T]he Eleventh Amendment does not define the scope of the [s]tates' sovereign immunity; it is but one particular exemplification of that immunity."); *Idaho v. Coeur d'Alene*

*Tribe of Idaho,* 521 U.S. 261, 267–68, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (holding that Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states by citizens of other states).

■ The principle of sovereign immunity, preserved by constitutional design, "accords the '[s]tates the respect owed them as members of the federation.' " *Alden,* 527 U.S. at 748–49, 119 S.Ct. 2240 (quoting *Puerto Rico Aqueduct and Sewer Authority,* 506 U.S. at 146, 113 S.Ct. 684); *see also Coeur d'Alene Tribe,* 521 U.S. at 268, 117 S.Ct. 2028 (recognizing "the dignity and respect" afforded to a state, which the immunity is designed to protect). Therefore, as the Court of Appeals has opined, the doctrine "precludes suit against governmental entities absent the State's consent." *ARA Health Servs., Inc. v. Dep't of Public Safety and Corr. Servs.,* 344 Md. 85, 91–92, 685 A.2d 435 (1996).

In *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Supreme Court examined whether the ADEA contained a clear abrogation of the states' Eleventh Amendment immunity from suit by individuals and whether the extension of the ADEA to the states was a proper exercise of Congress's power under § 5 of the Fourteenth Amendment, thereby constituting a valid exercise of congressional power to abrogate the states' Eleventh Amendment immunity from suit by individuals. The Supreme Court concluded that, "[e]ven where the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting [s]tates." *Id.* at 78, 120 S.Ct. 631.

In *Alden,* the Supreme Court affirmed the applicability of the Eleventh Amendment to states and state entities sued in their own courts, holding that Article III, § 1 of the United States Constitution "in no way suggests ... that state courts may be required to assume jurisdiction that could not be vested in the federal courts and forms no part of the judicial power of the United States." *Id.* at 753, 119 S.Ct. 2240. The

Supreme Court, on the other hand, made clear that state law could abrogate the state's Eleventh Amendment immunity. *Id.* at 755, 119 S.Ct. 2240; *see also Robinson v. Bunch,* 367 Md. 432, 439, 788 A.2d 636 (2002).

The General Assembly, in Section 4–105(d)[8] of the Education Article, provided that a "county board shall have the immunity from liability described under § 5–518 of the Courts and Judicial Proceedings Article." Section 5–518(b), in turn, provides that "[a] county board of education . . . may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured . . . above $100,000." Subsection (c) of § 5–518, however, prohibits a county board of education from "rais[ing] the defense of sovereign immunity to any claim of $100,000 or less."

The interpretation of a statute is a judicial function. *Muhl v. Magan,* 313 Md. 462, 481–82, 545 A.2d 1321 (1988). Our

---

8. Section 4–105, entitled "Comprehensive liability insurance; defense of sovereign immunity" provides:

(a) Each county board shall carry comprehensive liability insurance to protect the board and its agents and employees. The purchase of this insurance is a valid educational expense.

(b) The State Board shall establish standards for these insurance policies, including a minimum liability coverage of not less than $100,000 for each occurrence. The policies purchased under this section shall meet these standards.

(c)(1) A county board complies with this section if it:

(i) Is individually self-insured for at least $100,000 for each occurrence under the rules and regulations adopted by the State Insurance Commissioner; or

(ii) Pools with other public entities for the purpose of self-insuring property or casualty risks under Title 19, Subtitle 6 of the Insurance Article.

(2) A county board that elects to self-insure individually under this subsection periodically shall file with the State Insurance Commissioner, in writing, the terms and conditions of the self-insurance.

(3) The terms and conditions of this individual self-insurance:

(i) Are subject to the approval of the State Insurance Commissioner; and

(ii) Shall conform with the terms and conditions of comprehensive liability insurance policies available in the private market.

(d) A county board shall have the immunity from liability described under § 5–518 of the Courts and Judicial Proceedings Article.

*Id.*

goal is to "ascertain and effectuate legislative intent," *Consol. Constr. Servs., Inc. v. Simpson*, 372 Md. 434, 456, 813 A.2d 260 (2002), which can "be divined through an analysis of the plain language of the statute itself and from consideration of the statutory scheme as a whole." *Moore v. Miley*, 372 Md. 663, 677, 814 A.2d 557 (2003). We construe the words of a statute "according to their common and everyday meaning." *Id.* When the words are "clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Id.* (citation and quotation marks omitted). We may not "modify an unambiguous statute by adding or removing words to give it a meaning not reflected by the words the Legislature chose to use, nor 'engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.'" *Facon v. State*, 375 Md. 435, 446, 825 A.2d 1096 (2003) (citation omitted). To the extent "reasonably possible," we read a statute so "that no word, phrase, clause or sentence is rendered surplusage or meaningless." *Mazor v. State of Md., Dep't of Corr.*, 279 Md. 355, 360, 369 A.2d 82 (1977).

To effectuate the legislative intent, we may also consider "the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Chesapeake Charter, Inc.*, 358 Md. at 135, 747 A.2d 625 (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986)). When we are unable to determine the legislative intent, we may look to legislative history, the statutory purpose and the "relative rationality and legal effect of various competing constructions." *Baltimore County v. RTKL Assocs.*, 380 Md. 670, 678, 846 A.2d 433 (2004).

Patently, the language of C.J. § 5–518(c) unequivocally waives "sovereign immunity" for any claim of $100,000 or less. *See Lizzi v. Washington Metro. Area Transit Auth.*, 156 Md.App. 1, 9–10, 845 A.2d 60 (2003) (holding that, for the General Assembly to abrogate sovereign immunity, a waiver must be "unequivocally expressed in the statutory text" and that a waiver must "be strictly construed, in terms of its

scope, in favor of the sovereign"); *see also State v. Sharafeldin*, 382 Md. 129, 140, 854 A.2d 1208 (2004) (opining that the State's immunity from suit is "one of the highest attributes of sovereignty" and that courts decline to abrogate sovereign immunity by judicial fiat).

Because the plain language of C.J. § 5–518(c) unambiguously waives appellee's sovereign immunity for claims up to $100,000, appellant contends that drawing any distinction between sovereign immunity and Eleventh Amendment immunity is unnecessary and, in support of her contention, points to our decision in *Norville, supra.* In *Norville*, a former employee of the Anne Arundel County Board of Education sued the Board, alleging age discrimination under the ADEA. Similar to the appeal *sub judice,* the former employee argued that the county board was not an arm of the State for purposes of Eleventh Amendment immunity and, alternatively, that, if entitled to Eleventh Amendment immunity, the General Assembly waived the Board's sovereign immunity pursuant to C.J. § 5–518(c).

We concluded that the Anne Arundel County Board of Education was a state agency and that the "plain language of the statute indicates that the Board may not raise the defense of sovereign immunity in regard to *any claim* of $100,000 or less." *Id.* at 64–65, 862 A.2d 477 (emphasis supplied). The Court of Appeals granted the Board's petition for *writ of certiorari* to decide whether we erroneously construed C.J. § 5–518(c) as a waiver of the Board's immunity from suit under the Eleventh Amendment. The Court, however, never reached the question presented because, as it explained, the former employee's suit was barred by the principles of *res judicata.*[9] 390 Md. at 102–03, 887 A.2d 1029. Accordingly,

---

9. The Court of Appeals' decision was predicated upon the determination of the United States District Court for the District of Maryland that the Anne Arundel County Board of Education was a State entity entitled to assert Eleventh Amendment immunity. The former employee chose not to appeal the decision to the U.S. Court of Appeals, but instead filed suit in the Circuit Court for Anne Arundel County, alleging age discrimination in violation of Md.Code (1957, 2003 Repl.Vol.), Art. 49B, unjust

the Court vacated the judgment and remanded the case to us with instructions to dismiss the appeal.

Because our decision was vacated, appellee argues that it is improper for appellant to assign precedential value to our analysis and holding. In *West v. State*, 369 Md. 150, 157, 797 A.2d 1278 (2002), the Court of Appeals held that "a Court of Special Appeals' opinion underlying a judgment, which is reversed or vacated in its entirety by this Court on another ground, may, depending upon the strength of its reasoning, constitute some persuasive authority in the same sense as other *dicta* may constitute persuasive authority." Appellee, however, maintains that there is nothing persuasive about our reasoning in *Norville* and argues that our decision overlooks Supreme Court precedent that neither consent to be sued in state court nor a general waiver of sovereign immunity is sufficient to constitute a waiver of Eleventh Amendment immunity. *See Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149–50, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (holding consent to be sued in state court insufficient); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (holding general waiver of sovereign immunity insufficient).

According to appellee, in order to effectively waive Eleventh Amendment immunity, C.J. § 5–518(c) would have to do more than reference "any claims." Instead, relying upon the unreported decision [10] in *Barnes v. Anne Arundel County Bd. of Educ.*, 2001 WL 121962 (D.Md.2001), appellee insists that the statute would need to specifically assert that immunity under the Eleventh Amendment is waived. In *Florida*

---

enrichment, *quantum meruit,* common law wrongful discharge and intentional infliction of emotional distress. The Court of Appeals held that the district court's ruling was deemed a final decision on the merits.

**10.** It has been held that unreported cases are not acceptable authority. *Powers v. Hadden*, 30 Md.App. 577, 353 A.2d 641 (1976). An unpublished opinion has no binding precedential effect in unrelated matters as to the legal principles applied. *In re Bast*, 212 B.R. 499 (Bankr. D.Md.1997).

*Dept. of Health and Rehab. Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981), cited by *Barnes,* the Supreme Court reviewed whether Florida expressly waived its Eleventh Amendment immunity and consented to suit in federal court based upon two acts of the State. The first was a Florida law providing that the Department of Health and Rehabilitative Services is a "body corporate" with the capacity to "sue and be sued." *Id.* at 149, 101 S.Ct. 1032. The second was an agreement under the Medicaid Program in which the Department of Health and Rehabilitative Services agreed to "recognize and abide by all State and Federal Laws, Regulations, and Guidelines applicable to participation in an administration of, the Title XIX Medicaid Program." *Id.*

The Supreme Court opined that "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction' " and added that the "mere fact that a [s]tate participates in a program through which the Federal Government provides assistance for the operation by the [s]tate of a system of public aid is not sufficient to establish consent on the part of the [s]tate to be sued in the federal courts." *Id.* at 150, 101 S.Ct. 1032 (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). The lower court holding could not be reconciled with these principles and, accordingly, the Supreme Court held that Florida did not waive its immunity under the Eleventh Amendment. *Id.; see also Edelman,* 415 U.S. at 673–74, 94 S.Ct. 1347 (establishing that neither such participation in itself, nor a concomitant agreement to obey federal law, is sufficient to waive the protection of the Eleventh Amendment).

Conversely, in *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), the Supreme Court concluded that the statutory consent to suit provision in a bi-state compact between New York and New Jersey, creating the Port Authority of New York and New Jersey, elucidated by a venue provision, established the states'

waiver of Eleventh Amendment immunity. *Id.* at 306–08, 110 S.Ct. 1868. In *Feeney,* an employee of a railroad owned by the Port Authority of New York and New Jersey brought an action against the railroad pursuant to the Federal Employers' Liability Act and related federal statutes. The Port Authority moved to dismiss the complaints, asserting that it enjoyed New York and New Jersey's sovereign immunity.

New York and New Jersey, however, in a consent to suit provision, provided that they "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise . . . against the Port of New York Authority." *Id.* at 306, 110 S.Ct. 1868. Sensitive to the values underlying the Eleventh Amendment, the Supreme Court declared that consent to suit in federal court must be express and, thus, held that it construes ambiguous and general consent to suit provisions, standing alone, as insufficient to waive Eleventh Amendment immunity. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (holding that general consent to suit provision in Article III, § 5, of the California Constitution, providing "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law" did not waive Eleventh Amendment immunity because the "provision does not specifically indicate the [s]tate's willingness to be sued in federal court").

The Supreme Court further concluded that other textual evidence of a state's consent to suit in federal court may resolve any ambiguity and sufficiently establish the scope of the general consent to suit. In *Feeney,* the venue statute, which was passed as part of the same act setting forth the consent to suit provision, declared that venue "shall be laid within a county or judicial district, established by one of said States or by the United States." *Id.* at 307, 110 S.Ct. 1868. The Supreme Court, therefore, held that the venue provision resolved any ambiguity contained in the states' general consent to suit provision and that the two provisions read together expressly waived the states' Eleventh Amendment immunity.

In light of *Florida Nursing Home Ass'n* and *Feeney,* the General Assembly specifically prohibited a county board of education from raising the defense of *Eleventh Amendment* immunity to any claim of $100,000 or less. Certainly, C.J. § 5–518 is less expansive than the bi-state compact in *Feeney.* Furthermore, the lack of a venue provision is of no consequence because, in light of *Alden's* holding, Eleventh Amendment immunity may be asserted by the State in either federal or state courts. Thus, there is no need for C.J. § 5–518(c) to specifically indicate a consent to suit in federal court.

C.J. § 5–518(c) is not a general waiver of sovereign immunity as demonstrated by Supreme Court precedent. Under the settled approach to statutory interpretation, the words "any claim" cannot reasonably be read to exclude certain categories of claims. The General Assembly left no room for any other reasonable construction. The plain and unambiguous meaning of the statutory text is that appellee cannot assert sovereign immunity as a defense to "any" claim under $100,000, including those based on age discrimination. *See Norville,* 160 Md.App. at 70, 862 A.2d 477 (as persuasive support for our holding that C.J. § 5–518(c) waives sovereign immunity for claims up to $100,000).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY APPELLEE.**